### In re F.P., H.P., S.P., J.P., D.P. and L.P.

[665 A.2d 597]

No. 94-309

Present: Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.

Opinion Filed August 11, 1995

118

*David G. Reid*, Brattleboro, for Appellant Father.

*Robert DiBartolo*, Orange County Deputy State's Attorney, Chelsea, for Appellee State.

*Nancy A. Smith* of *Cheney, Brock, Saudek & Mullett, P.C.*, Montpelier, for Appellee Mother.

**Gibson, J.** Father appeals the merits and disposition orders of the Orange Family Court, which concluded that six of his children were in need of care and supervision, placed the children in the care of their mother under the protective supervision of the Department of Social and Rehabilitation Services, and ordered father to reside away from the family home. We affirm.

This case arose when twelve-year-old F.P., the oldest of father's seven children, ran away from home and told the state police that her father had abused her. The State subsequently filed petitions alleging that F.P. and five of her siblings were in need of care and supervision (CHINS) because they had been abused and/or lacked proper paren-

tal care necessary for their well-being. See 33 V.S.A. § 5502(a)(12)(A) & (B). The petitions were accompanied by affidavits specifying the allegations, which included that mother had failed to protect the children from abuse and that F.P. had also been sexually abused by father. A hearing on the petitions took place in January and February 1993.

The court found that father had been the children's primary caretaker until the CHINS petitions were filed, and that mother, a registered nurse, has supported the family financially. Father, who suffers from a personality disorder, has a structured approach to teaching and disciplining the children that frequently involves physical punishment. He has hit all the children, including L.P. who was two years old at the merits hearing. On one occasion father struck three-year-old D.P., six-year-old J.P. and eight-year-old S.P. on their faces for making too much noise while he was reading a book. When D.P. told father he would not be quiet, father picked him up, held him against a door and shook him. Father has used his hands or a belt to punish the children, but he has also kicked F.P. In father's words, "under the rarest of circumstances . . . a loving hand . . . [is] expressed through the foot."

Although the court did not find that father had sexually abused F.P., it made findings regarding the incidents that led the State to allege sexual abuse. Two of the incidents involved father touching F.P.'s breasts. In the first, father ordered F.P. to lift her shirt, and after she complied, he touched one of her breasts. Father's reason for touching F.P. in this manner was to determine if she was "psychologically pubescent." In a later incident, father made F.P. remove her shirt and lie on his bed. He felt her breasts using his fingertips. Although father claimed he conducted the examination to determine if F.P.'s breasts were "histologically correct," the court did not find this explanation credible in light of his wife's training as a registered nurse. The court noted that neither F.P. nor father had told mother about either incident.

The last incident relevant to the sexual abuse allegation occurred a few days after the "breast examination." Father took the children to swim at a pond, forbidding them from wearing bathing suits. In spite of F.P.'s protestations about skinny dipping, father ordered her to conform and prohibited her from wearing anything while swimming. At some point, while F.P. and the other children were on shore, and father was hip-deep in the water, father began rubbing his hands on his penis. Sometime later "white stuff" came out of father's penis.

Father claims he did not masturbate or ejaculate, but simulated masturbation and used soap to make F.P. think he had ejaculated. The court explained father's purpose for the demonstration:

> He wanted to demonstrate to her what a male organ would look like prior to sexual contact. He believes it is important for F.P. to learn this so that she can be as prepared as possible to control her life and not to become a victim of what he refers to as "heterosexual subjugation." The breast exam incident and the masturbation incident were part of an "original lesson she would not forget" designed to teach her to know herself and know her adversary.
>
> . . . In [father's] opinion it will not be necessary for him to repeat these "intimate lessons" with the other children because [F.P.] can pass the information on to them as the oldest sibling.

The court found no evidence that father intended to gratify his or F.P.'s sexual desires and thus could not find that father sexually abused F.P. The court concluded, however, that these incidents left F.P. without proper parental care necessary for her well-being because they put her healthy psychological growth and development at a substantial risk of harm.

The court also concluded that F.P. was an abused child. Citing this conclusion, its findings that father used corporal punishment unreasonably and the risk that father would repeat the masturbation and breast-touching lessons to train F.P.'s sisters, the court concluded that H.P., S.P., J.P., D.P. and L.P. were CHINS because they too were without proper parental care necessary for their well-being. The court dismissed the petition against mother because the State did not establish that she had failed to protect the children. Father filed a notice of appeal to this Court following the order on disposition.

## I.

Father first claims that the court was without jurisdiction once it determined that the State had failed to prove the allegations against mother. In other words, father contends that 33 V.S.A. § 5526 requires the juvenile court to find the children CHINS with regard to both parents before it may proceed to disposition. We disagree.

Section 5526 requires the court to retain jurisdiction to consider disposition if it finds that the allegations contained in the

CHINS petition are established. See *id.* § 5526(b). Conversely, if the allegations are not established, the court must dismiss the petition. *Id.* § 5526(a). In this case, the court determined that the allegations against father had been established but the allegations against mother had not. It dismissed the petition as to mother but retained jurisdiction to consider disposition in light of the court's conclusion that the children were CHINS due to father's abuse of F.P. and his failure to provide F.P. and her siblings with proper parental care necessary for their well-being. See *id.* § 5502(a)(12)(A) & (B). The essence of father's argument is that if the allegations against one of the parents are not established, but the allegations against the other are, then § 5526(a) trumps § 5526(b) and the court must dismiss the case.

In *In re B.L.*, 145 Vt. 586, 494 A.2d 145 (1985), this Court considered an issue related to the one claimed by father here. In *B.L.*, which was decided under the predecessor to § 5526, we held that a CHINS petition that did not allege wrongdoing by one of the child's parents was not constitutionally defective. *Id.* at 592–93, 494 A.2d at 148-49. We noted that the "only . . . issue to be resolved at the merits hearing . . . [is] whether the children were in need of care and supervision" and that parental fitness was an issue for the disposition stage. See *id.* at 592, 494 A.2d at 149. Thus, the children could be CHINS even though the petitions did not contain any allegations regarding the noncustodial parent. *In re B.L.* is instructive in this case because the court determined that the children were CHINS based on the abusive and deficient parenting of one parent only, just as in *B.L.* Underlying our decision in *B.L.* is § 5526's authorization for finding a child CHINS when only one parent might be responsible for the children's lack of care or abuse.

Also relevant to father's claim here are the purposes served by a CHINS proceeding. One stated purpose of chapter 55 of Title 33 is "to provide for the care, protection and wholesome moral, mental and physical development of children." 33 V.S.A. § 5501(a)(1). We have stated that CHINS proceedings are protective not penal, *In re R.S.*, 143 Vt. 565, 571, 469 A.2d 751, 755 (1983), and that the child's welfare is the paramount concern. See *In re M.B.*, 158 Vt. 63, 67, 605 A.2d 515, 517 (1992). Under father's construction of § 5526, the court would be required to dismiss the case and return the child to an abusive home merely because the State failed to establish the allegations against one of the parents. That construction is directly contrary to the protective nature of CHINS proceedings and would serve only to

further endanger the child. Because the focus of a CHINS proceeding is on the child's welfare, we conclude that the purpose of chapter 55 is furthered where the court retains jurisdiction under § 5526 if the allegations in the petition are established as to one parent and the court concludes the children are either abused or lack proper parental care necessary for their well-being.

Father also argues that the court violated a host of state and federal constitutional provisions by retaining jurisdiction to consider disposition when it was required to dismiss the case. Because we conclude that the court was required to retain jurisdiction in this case, we do not address these claimed violations.

## II.

Father also claims he was denied proper notice of the allegations against him because the court concluded that the children were CHINS based on a different subsection of the statute than the State had alleged in the petitions. We disagree.

Notice to parents in CHINS cases is sufficient if the supporting affidavits recite the substance of the allegations plainly and with particularity so that the parties are afforded an adequate opportunity to respond. *In re M.B.*, 158 Vt. at 67, 605 A.2d at 517; *In re R.M.*, 150 Vt. 59, 70–71, 549 A.2d 1050, 1057 (1988); see also *In re A.O.*, 161 Vt. 302, 306, 640 A.2d 537, 539 (1994) (notice sufficient if affidavits supporting CHINS petition plainly recite substance of allegations). The State is not required to choose between the statutory subsections (A) (abuse) and (B) (lack of proper parental care), and where it alleges both grounds, the court may conclude a child is CHINS on either or both grounds. See *In re R.M.*, 150 Vt. at 70–71, 549 A.2d at 1057.

Father misconstrues the petitions, which indeed gave the parties adequate notice of the allegations the State sought to prove at the merits hearing. The State filed amended petitions regarding each of the six children subject to the proceedings. Each petition noted that the subject child was in need of care and supervision, that the "conduct, condition or surroundings of the child are endangering the child's health and welfare" and that 33 V.S.A. § 5502(a)(12)(A) and (B) were applicable. The State alleged that the younger children were physically abused by father, F.P. was physically and sexually abused by father, and mother failed to protect all six children. Included with the six petitions were affidavits describing the specific instances of alleged sexual and physical abuse of the children by father. Those allegations were the subject of the merits hearing.

■ Father complains that he was denied adequate notice because the court entered a conclusion of CHINS regarding the youngest children based on § 5502(a)(12)(B) (lack of proper parental care) instead of subsection (a)(12)(A) (abuse) and that the allegations of sexual abuse were proven only to the extent that the court concluded F.P. was CHINS under subsection (B) but not (A). The court is not bound to draw the legal conclusions urged by the State or by defense counsel. Here, the petitions clearly noted that the State was proceeding under § 5502(a)(12)(A) and (B) with specific allegations appearing in the affidavits. The court was free to conclude that the evidence bearing on those allegations demonstrated that the children were CHINS under either subsection of the statute. Further, we find nothing defective in the court's conclusion that the children were without proper parental care necessary for their well-being based on father's excessive and unreasonable use of corporal punishment, the masturbation incident, father's physical abuse of F.P. and his touching of F.P.'s breasts. In sum, father had more than adequate notice to defend against the State's allegations.

## III.

■ Father next challenges the court's conclusion that he abused F.P. Father asserts he has a constitutional right to hit his children, and without any finding that F.P.'s general health was threatened by his blows or that those blows resulted in medical attention, the family court could not conclude that father's use of corporal punishment was unreasonable and abusive.* Our review of the record leads us to conclude that the court's findings are not clearly erroneous and amply support its conclusion that what father calls reasonable corporal punishment was physical abuse of F.P. See *In re M.M.*, 159 Vt. 517, 522, 621 A.2d 1276, 1279 (1993) (Supreme Court will uphold family court's order if findings are not clearly erroneous and conclusions are supported by findings).

The court made numerous findings with respect to father's abuse of F.P. and his use of physical punishment to discipline F.P. and her siblings. Father used physical punishment frequently, hitting the children, including F.P., above and below the waist with his hand or a

---

* Father also claims that the evidence was insufficient to prove that he abused H.P., S.P., J.P., D.P. and L.P. Inasmuch as the trial court agreed, and we have concluded that the court properly determined that F.P.'s siblings were CHINS based on 33 V.S.A. § 5502(a)(12)(B), we do not address this claim.

belt. He expected the blows to be painful and that the pain would be a "hardship to be endured," although pain was not the punishment's objective. On occasion, father would punish the children as a group, lining them up by age and striking them with a belt.

The court found that father struck F.P. with a belt on an average of once every other week. Father also hit her twice on the back with a shovel for not using the proper tool to dislodge a rock buried in a road father and some of the children were clearing for the summer. Father has also kicked F.P. with steel-toed boots on more than one occasion to train her for "brutally difficult work-related situations that might occur in the future" in addition to discipline. These kicks were painful for F.P. and resulted in bruises on her shins and buttocks. The court found that F.P. is afraid of her father, and that the second time she ran away from home she left a note stating that she "just can't take it any more."

These findings unquestionably support a conclusion that F.P. is an abused child. Although father claims he is entitled as F.P.'s parent to strike her, the pain and bruising that father's blows have inflicted on her were sufficient to justify a conclusion that father did not reasonably discipline F.P. but unreasonably abused her. This conclusion is justified further by father's admission that he has kicked F.P. on more than one occasion to teach her "[u]niversal survival skills." Teaching children "universal survival skills" by kicking them with steel-toed boots hard enough to cause pain and bruising is not reasonable corporal punishment as father asserts. Cf. *In re W.G.*, 349 N.W.2d 487, 489–91 (Iowa 1984) (father's claim that he used corporal punishment as means of correcting children's behavior was sham where children were kicked, struck with belts and boards, spanked and slapped for reasons related more to father's passions than to children's upbringing). Moreover, the juvenile court need not wait for a child to need medical attention due to a parent's hit or kick before such conduct is considered abuse for the purposes of a CHINS proceeding. Cf. *In re D.P.*, 147 Vt. 26, 31, 510 A.2d 967, 970 (1986) (where one child suffered serious physical abuse, juvenile court not required to wait for additional injuries to be inflicted upon sibling to conclude that material circumstances have changed with respect to sibling).

Father nevertheless asserts that a hit or kick sufficient to bruise a child is not necessarily abuse, relying on *In re Ethan H.*, 609 A.2d 1222 (N.H. 1992). *Ethan H.* does not apply to the circumstances in this case. In that case, the State did not establish the statutory require-

ment that the child be injured or harmed because it offered nothing to rebut the overwhelming evidence that the child bruised easily and was unharmed by the mother's spankings. See *id.* at 1225. The New Hampshire court recognized, however, that "a child's bruises may be of such a nature as to establish *prima facie* evidence" of harm or a threat of harm. *Id.* at 1226. We cannot say as a matter of law that F.P.'s bruises were not indicative of abuse based on the record before us. See *Gerety v. Gerety*, 131 Vt. 396, 401, 306 A.2d 693, 695 (1973) (court's finding that children were subjected to excessive corporal punishment must stand if evidence fairly and reasonably supports it).

## IV.

Finally, father argues that the court erred by ordering him to participate in sex offender treatment because the court did not find that he had sexually abused F.P. The State concedes as much, and suggests that the order requiring such treatment be stricken. We agree that the order requiring father to participate in a treatment program for sex offenders must be stricken under these circumstances.

*The merits order of March 11, 1993 is affirmed. The October 5, 1993 disposition order requirement that father participate in sex offender treatment is stricken. The disposition order is affirmed in all other respects.*