NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2017 VT 71

No. 2017-031

In re D.H. & S.C., Juveniles

Supreme Court

On Appeal from
Superior Court, Windham Unit,
Family Division

July Term, 2017

Katherine A. Hayes, J.

Michael Rose, St. Albans, for Appellant Mother.

Matthew Valerio, Defender General, and Rebecca Turner, Appellate Defender, Montpelier,
  for Appellees Juveniles.

Thomas J. Donovan, Jr., Attorney General, Benjamin Battles, Solicitor General, Montpelier, and
  Jody A. Racht, Assistant Attorney General, Waterbury, for Appellee State.

Nancy Breiden, Vermont Legal Aid, Inc., Rutland, and Barbara Prine and Rachel Seelig,
  Vermont Legal Aid, Inc., Burlington, for Amicus Curiae Disability Law Project.

PRESENT: Reiber, C.J., Skoglund, Robinson and Eaton, JJ., and Teachout, Supr. J.,
         Specially Assigned

¶ 1.    **EATON, J.**  Mother appeals the termination of her parental rights to D.H., born in 2004, and S.C., born in 2006. She argues that the family court improperly withheld its discretion by refusing to grant a thirty-minute continuance so that she could attend the termination hearing. We agree and reverse.

¶ 2.    In December 2013, the Department for Children and Families (DCF) took D.H. and S.C. into emergency custody after mother arrived at a DCF meeting visibly impaired, having

driven to the meeting with the children in the car. The purpose of the meeting was to investigate allegations that mother's husband had struck D.H. and broken his wrist while the family lived in New Hampshire.[1] The family had moved to Vermont approximately one month earlier, but the children had not been enrolled in school.

¶ 3.    In April 2014, the parties stipulated that D.H. and S.C. were children in need of care or supervision. In May 2014, the court approved a disposition case plan with concurrent goals of reunification with mother or adoption. Mother engaged in substance abuse treatment and found stable housing with husband, in accordance with the case plan. By October 2015, both children had been placed with mother and husband at their residence. However, in December 2015, husband allegedly restrained D.H. during an argument to the point that D.H. had difficulty breathing. The day before, mother was denied take-home methadone because she had a positive drug screen. DCF removed both children from mother's care. They have remained in foster care since December 2015. D.H. is now thirteen years old and S.C. is eleven.

¶ 4.    DCF filed a termination petition in May 2016. On May 23, 2016, the family court sent notice to mother by first-class mail that a three-day termination hearing was set for October 24, 25, and 26, 2016. The notice stated that failure to appear without good cause would cause the court to consider the evidence of record and could result in an immediate order of termination. A status conference was held on September 29, 2016, which mother attended. The court began the conference by stating that "there is a termination of parental rights hearing scheduled for October 24th through 26th."

¶ 5.    When the termination hearing began at 9:12 a.m. on October 24, mother was not in the courtroom. Mother's attorney did not know where mother was, but stated she was confident

---

[1]   Mother's husband is not the biological father of either D.H. or S.C. D.H.'s father is deceased. S.C.'s father had not been involved in S.C.'s life for several years and did not appear for any of the proceedings below. He did not appeal the court's order terminating his parental rights to S.C.

mother knew about the hearing. DCF's attorney noted that mother had been at prior hearings and had been told the date of the termination hearing. The court agreed and stated that "the notices are very, very clear that failure to appear could result in a default—not a default, but in a judgment being issued on documentation. Is that your request?" DCF's attorney requested that the court decide the matter based on written evidence. The court then admitted DCF's exhibits without objection.

¶ 6.    The court suggested that DCF submit proposed findings based on the exhibits and that an order be issued based on that documentation. DCF's attorney agreed. When asked by the court to respond to the proposed procedure, children's attorney stated that she had been "struggling with this because [mother] has been at everything." The court agreed that it was "not the most straightforward case," but stated that "[t]his kind of seems like maybe what has happened is that mom has given up." Children's attorney noted that mother and her husband had separated and that mother had lost her housing and was living with family members.

¶ 7.    The court then granted a fifteen-minute recess during which mother's attorney unsuccessfully attempted to contact mother by phone. Following the recess, children's attorney requested that the court take testimony from a DCF caseworker to update the exhibits, and then to decide the petition based on the documentation. The court asked mother's attorney if she objected, and mother's attorney responded, "Well, I guess, I feel the need to preserve the mother's rights here, and I just don't think I'm willing to stipulate, but I understand where we're at." The court proceeded to hear brief testimony from the DCF caseworker. The caseworker stated that mother had revoked her releases, so DCF was unable to learn whether mother had been seeing her treatment providers. She also testified that mother was very well-bonded with the children, had consistently attended weekly visits, and generally behaved appropriately and met the children's needs during visits.

¶ 8.    After the caseworker finished testifying, mother's attorney noticed that she had missed a telephone call from mother, and the court granted a brief recess for her to return the call. Mother's attorney reported to the court that mother claimed she didn't realize the hearing was that morning, that mother was nearby in Townshend, and that she could be at the court in half an hour. Mother's attorney stated that mother sounded quite upset and wanted to be at the hearing. The court found that mother had not shown good cause for her absence, and declined to delay the hearing. The court stated:

> I'm not going to defer, I'm not going to call things off. Frankly, having reviewed the file, if we were going to have the contested hearing, I expect it would be more than three days that would be required. I was a little concerned, and we're now an hour plus into the hearing time that was set aside.

The hearing concluded at 10:09 a.m., less than an hour after it started.

¶ 9.    Mother's attorney subsequently filed a motion to reopen the evidence, which stated that mother was confused about the date because a DCF worker had told her that the hearing was Wednesday, Thursday, and Friday, when it actually was scheduled to begin on Monday. The court denied the motion. DCF then submitted proposed findings of fact and conclusions of law. Mother filed an objection in which she asserted that she had diabetes, which could produce false positive tests for alcohol, and that she had intended to present evidence on this condition at the merits hearing. Mother stated that she was not present for the incident involving her husband and D.H., and that any concerns about D.H.'s safety should be alleviated by the fact that mother and her husband had ended their relationship and husband had moved to Tennessee. She stated that she was ready and able to resume parenting her children.

¶ 10.    On December 22, 2016, the court granted the termination petition in a written decision. The court stated in its decision that "mother's failure to appear was additional evidence in support of the State's requested relief, as it was a stark example of an inability to organize her

4

own life and to attend to important matters, even those most likely to have significant impacts on her and her children's lives."

¶ 11. On appeal, mother argues that the family court erred by refusing to grant her request to recess for thirty minutes so she could attend. Whether to grant a motion to continue is a decision that falls within the trial court's discretion. State v. Ahearn, 137 Vt. 253, 267, 403 A.2d 696, 705 (1979). To support a claim of error, the party must show that the court failed to exercise its discretion, or that its discretion was exercised for reasons clearly untenable or to an extent clearly unreasonable. Id. Although this case involved a request for thirty-minute recess within a scheduled hearing rather than a request to reschedule to a later date, the same standard applies.

¶ 12. We agree with mother that the unique circumstances of this case warrant reversal. See State v. Hanlon, 164 Vt. 125, 128, 665 A.2d 603, 605 (1995) (explaining that "motion to continue must be decided on the particular facts and circumstances of each individual case"). It was early in the morning of the first day of the termination hearing when mother asked the court to break for thirty minutes for mother to attend. The hearing was scheduled to last three full days. In fact, the court anticipated that it would take even longer. Although mother's absence was her mistake in light of the proper notice she was given, her attorney had spoken with her and represented to the court that mother could be there in a short time. Delaying the hearing for a brief time to allow mother to appear would not have disrupted the court's calendar or prejudiced the children, DCF, or other litigants.

¶ 13. By contrast, denying the request had a harsh effect on mother because it resulted in the case being decided based on the exhibits and testimony presented by DCF, but without mother's testimony.[2] This deprived mother of the opportunity to testify regarding her participation

---

[2] Mother argues that the family court's action deprived her of the right to cross-examine DCF's witnesses. This argument is without merit, as mother's attorney was present and did in fact cross-examine the DCF caseworker.

5

in treatment, her progress toward the case plan goals, and her strong relationship with the children—evidence that the family court did not have before it when it rendered its decision. Instead, the court explicitly relied on mother's absence as evidence supporting termination, even though mother's attorney had informed the court that she was in touch with mother and requested the continuance while the hearing was still in progress.

¶ 14.    Furthermore, the record shows that mother was actively involved throughout the proceedings below.  Mother attended fifteen of the seventeen previous court hearings in the case.[3] She participated frequently and appropriately during these hearings.  Children's attorney drew attention to this fact at the termination hearing and indicated that she was reluctant to proceed without mother in view of the fact that mother "has been at everything."  Similarly, the DCF caseworker testified that mother had consistently attended visits with the children and was well-bonded with them.  Mother had recently filed a motion for increased visitation.  This was not a case where the parent demonstrated a complete lack of interest or involvement in the proceedings. Cf. In re X.L., No. 2011-353, 2012 WL 1293536, at *2-3 (Vt. March 15, 2012) (unpub. mem.), https://www.vermontjudiciary.org/sites/default/files/documents/eo11-353.pdf (holding court did not err by proceeding with contested TPR hearing in mother's absence; mother had stopped participating in case plan, failed to notify court of change in her address, and did not ask the court to reopen evidence or show what evidence she would have submitted).

¶ 15.    In a termination of parental rights proceeding, "all the parties involved are to be accorded a fair hearing, and their constitutional and other legal rights recognized and enforced." In re R.B., 152 Vt. 415, 421, 566 A.2d 1310, 1313 (1989) (quotation omitted).  Given that mother's fundamental right to be a parent was at stake, under the facts of this case it was unreasonable for the court to deny her request for a brief recess so she could attend and proceed with the contested

_____

[3]  One of the hearings she did not attend was continued at DCF's request, in part due to mother's absence.

hearing.  See <u>Land Fin. Corp. v. St. Johnsbury Wiring Co.</u>, 100 Vt. 328, 328, 137 A. 324, 326 (1927) (holding that refusal to grant continuance during trial was abuse of discretion because plaintiff was prevented from presenting key part of its case).[4]

¶ 16.    For these reasons, we reverse the court's decision to terminate mother's parental rights, and remand the matter to the family court for the evidence to be reopened so that mother may have an opportunity to participate.  The exhibits and testimony previously admitted by the court remain in evidence.  The court may consider this evidence as well as any additional evidence presented on remand.

<u>The decision of the family court terminating father's parental rights to S.C. is affirmed. The decision terminating mother's parental rights is reversed, and the case is remanded for further proceedings consistent with this opinion.</u>

FOR THE COURT:

---

Associate Justice

---

[4]  Because these circumstances alone warrant reversal, we find it unnecessary to address the remaining arguments raised by mother and juveniles.