NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2020 VT 80

No. 2020-111

| | |
|---|---|
| In re C.B., Juvenile | Supreme Court |
| | On Appeal from Superior Court, Windham Unit, Family Division |
| | July Term, 2020 |

Katherine A. Hayes, J.

Sarah R. Star of Sarah R. Star P.C., Middlebury, for Appellant Father.

Thomas J. Donovan, Jr., Attorney General, Montpelier, and Martha E. Csala, Assistant Attorney General, Waterbury, for Appellee Department for Children and Families.

Adele V. Pastor of Adele V. Pastor Law Office, Barnard, for Appellee Juvenile.

PRESENT: Reiber, C.J., Robinson, Eaton, Carroll and Cohen, JJ.

¶ 1.     **REIBER, C.J.**   Father appeals a family division order terminating his parental rights to his son C.B., born in August 2016. On appeal, father alleges that the court committed several errors related to paternal grandmother's requests for a guardianship of C.B. in the probate division and for visitation with C.B. in the family division. Father also asserts that the court deprived him of standing at the merits stage, failed to assign him counsel, and erred in not directing a suitability assessment of paternal grandmother at the initial temporary-care hearing. We affirm.

¶ 2.     The State filed a petition alleging that C.B. was a child in need of care or supervision (CHINS) in October 2017 based on allegations that father had repeatedly engaged in domestic violence and mother continued to allow father to be around her and C.B. despite repeated

abuse and court orders barring contact. At the time the case was filed, mother was the custodial parent and father was not yet identified as C.B.'s parent. Mother, as the custodial parent, stipulated to the merits in January 2018 and agreed that C.B. was without proper parental care. C.B. was placed with mother under a conditional custody order (CCO), which prohibited mother from allowing contact between father and C.B. as long as court-imposed criminal conditions of release barred such conduct. A disposition order was issued in March 2018 that continued conditional custody with mother. Custody of C.B. was transferred to the Department for Children and Families (DCF) after mother violated the CCO, including by permitting father to have contact with C.B., and then the court transferred custody back to mother with conditions. In August 2018, the court transferred custody of C.B. to DCF based on its finding that mother had violated the terms of the CCO. DCF placed C.B. with a foster family, where he has since remained.

¶ 3.     Father's parentage was established in January 2018 and he was added as a party to the case. A January 2018 order gave father the right to supervised parent-child contact, but he did not follow through and no visits took place. In June 2018, father filed a public-defender application and was assigned counsel. Father was incarcerated in November 2018 and remained there throughout the rest of the case. Father has a lengthy criminal history including a conviction for attempted aggravated assault with a deadly weapon. At the time of the final hearing, he had several charges still pending.

¶ 4.     In January 2019, the court issued a modified disposition order, continued DCF custody, and approved and adopted DCF's case plan with a goal of reunification with parents. Father's goals included securing housing, attending appointments with a mental-health provider, refraining from criminal acts, working on domestic violence and other issues in therapy, and demonstrating progress in therapy and parenting programs. At the time, father was incarcerated and not permitted to have contact with C.B. In March 2019, father sent a letter to DCF indicating that he did not want further interaction with C.B. Petitions to terminate parental rights were filed

2

in May 2019. Mother relinquished her parental rights conditioned on father's parental rights being terminated.

¶ 5. Following a hearing, the court found the following. There was a change of circumstances based on father's stagnation. Father had not made progress on important goals, had not had any contact with C.B., and had no relationship with him. Father had not addressed his significant history of violence and serious mental-health issues. Father had not taken the necessary steps to address his mental-health or emotional issues, had not engaged cooperatively with DCF, and had had no contact with C.B. The court assessed the statutory best-interests factors. The court found that C.B. had high needs due to his trauma history and required a consistent routine. He was bonded with his foster parents and had no relationship with mother or father. C.B. was adjusted to his current home and school and had made progress through his therapy. Father could not parent C.B. within a reasonable time. Father required safe housing, employment, therapy, parenting classes, and time to develop a relationship with C.B. Given father's lack of progress towards achieving case-plan goals, there was no possibility he could safely parent C.B. in a time reasonable for C.B., given C.B.'s need for permanency. Father appeals.

¶ 6. Termination of parental rights after initial disposition requires the court to find a change of circumstances and that termination is in the child's best interests. In re D.F., 2018 VT 132, ¶ 29, 209 Vt. 272, 204 A.3d 641. "As long as the court applied the proper standard, we will not disturb its findings unless they are clearly erroneous, and we will affirm its conclusions if they are supported by the findings." Id. ¶ 30 (quotation omitted).

## I. Temporary Placement

¶ 7. On appeal, father argues that there were several errors made during the pendency of the proceeding, which require reversal. Father's first few claims relate to paternal grandmother. At a May 2018 temporary-care hearing, the court asked the parties about potential placements. Several relatives were discussed, including paternal grandmother. Mother expressed that she did

3

not want C.B. placed with father's family, "unless that was a last resort." The court indicated that it was not interested in pursuing paternal grandmother as a placement "unless there's been a very grave misunderstanding as to her involvement in the events that led to this order."

¶ 8. On appeal, father claims that the court directed DCF to disregard the law and improperly dismissed paternal grandmother as a potential placement without conducting a suitability assessment as required by statute. Pursuant to 33 V.S.A. § 5307(e), at a temporary-care hearing, DCF is required to provide certain information to the court, including the identity of relatives that might be "appropriate, capable, willing, and available to assume temporary legal custody of the child." Id. § 5307(e)(5)(A). For those identified, DCF is directed to complete a suitability assessment. Id. § 5307(e)(5)(B).

¶ 9. Father's argument has not been preserved for appeal. See In re C.H., 170 Vt. 603, 604, 749 A.2d 20, 22 (2000) (mem.) (explaining that parent must raise issue below to preserve it for appeal). There was no objection at the temporary-care hearing or later in the proceeding to the court's direction to DCF or DCF's action in not pursuing paternal grandmother as a placement at that time. Because the issue was not raised with the trial court, there was no opportunity for the court or DCF to explain the reasons for their actions. On appeal, the State contends that there were credible reasons for the court to find that grandmother was not an "appropriate" placement, 33 V.S.A. § 5307(e)(5)(A), including that she had allowed father to see C.B. in violation of father's conditions of release. Given the lack of preservation, we do not address the argument. See In re A.M., 2015 VT 109, ¶ 28, 200 Vt. 189, 130 A.3d 211 (explaining that to properly preserve argument for appeal, party "must present the issue with specificity and clarity in a manner which gives the trial court a fair opportunity to rule" (quotation omitted)).

## II. Grandparent Visitation

¶ 10. Father also claims that the court erred in denying grandparent visitation. After the termination petition was filed in the family division in May 2019, paternal grandmother sought to

4

appear in the juvenile proceeding through an attorney and requested visitation. The court declined to enter grandmother as a party and denied the request for visitation. The court acted within its authority in denying this request. Grandparents, who are not guardians or custodians, are not parties in juvenile proceedings. See 33 V.S.A. § 5102(22) (defining parties to juvenile proceedings). Moreover, there is no statutory right to grandparent visitation for children who are the subject of juvenile proceedings. See id. § 5319(e) (providing that court "may" order contact with relative of child "[u]pon motion of the child's attorney").

### III.  Guardianship Petition

¶ 11.    After the State moved to terminate parental rights, paternal grandmother filed for a guardianship of C.B. in the probate division. The probate division's jurisdiction over guardianship proceedings when the same child is the subject of a custody proceeding in the family division is governed by a statute pertaining to guardianship adopted by the Legislature in 2014, 2013, No. 170 (Adj. Sess.), § 1, and a 2016 amendment to the statute governing permanent guardianships in juvenile cases, 2015, No. 170 (Adj. Sess.).[1]  The purpose, history, and scope of these legislative enactments are important to resolution of this appeal.

### A.  Relevant Statutes

¶ 12.    The 2014 legislation was the culmination of a multi-year effort to update the minor guardianship laws and to deal specifically with the relationship between minor guardianship proceedings in the probate division and CHINS or domestic cases in the family division. In 2011, the Legislature established a multi-stakeholder committee to study issues related to probate and family division jurisdiction over minor guardianship proceedings. 2011, No. 56, § 23. The committee was charged with studying, among other things, "the circumstances under which it is appropriate to transfer minor guardianship proceedings between the probate and family divisions,

_____

[1]  Because the 2014 and 2016 statutes have the same Act number, they are referred to as the 2014 and 2016 Acts, respectively.

5

including which division should have authority to order the transfer" and what criteria should apply; the role of DCF in minor guardianship proceedings in the probate division; and whether and what changes to minor guardianship proceedings would best serve the interests of children. Id. § 23(a)(1), (4), (5).

¶ 13. In its 2012 report, the committee noted that the legal structure for minor guardianships had not been comprehensively revised since the initial enactment in the 1920s and identified challenges in the existing guardianship structure. Minor Guardianship Proceedings in Vermont, 2012 Report to the Vermont Legislature 4-5 (Dec. 15, 2012), https:// legislature.vermont.gov/Documents/2014/WorkGroups/House%20Judiciary/Bills/H.581/Witness %20Testimony/H.581~Amy%20Davenport~Minor%20Guardianship%20Proceedings%20in%20 Vermont%202012%20Report%20to%20the%20Vermont%20Legislature~12-4-2013.pdf [https:// perma.cc/TL64-PEJD]. The committee's recommendations became the basis for the 2014 Act. See Act Summary, 2013, No. 170 (Adj. Sess.), https://legislature.vermont.gov/Documents/ 2014/Docs/ACTS/ACT170/Act170%20Act%20Summary.pdf [https://perma.cc/4GVD-FY7B].

¶ 14. The 2014 Act made significant changes to the structure of the minor guardianship statute. First, it more clearly distinguished between consensual and nonconsensual minor guardianship proceedings. Consensual minor guardianships are based on the consent of the parents. See 14 V.S.A. § 2626(a). To create a consensual minor guardianship, the probate division must find by clear and convincing evidence that the child is in need of guardianship, the parents had notice and knowingly and voluntarily consent to the guardianship, the proposed guardian is suitable, and the guardianship is in the child's best interests. Id. § 2626(d). For the purposes of a consensual guardianship, "child in need of guardianship" includes, among other things, a child who is in need of adult care because a custodial parent's physical or mental health prevents the parent from providing proper care and supervision for the child. Id. § 2622(2)(A)(ii).

6

¶ 15. In contrast, nonconsensual guardianships are established without the consent of the parents. See id. § 2627. The 2014 Act aligned the standard for granting a nonconsensual guardianship more closely with the standards for determining if a minor is CHINS under Title 33. The proposed guardian must establish by clear and convincing evidence that the child is a child in need of guardianship and the proposed guardian is suitable. Id. § 2627(a), (c). For purposes of a nonconsensual guardianship, "a child in need of guardianship" includes a child who is abandoned or abused by the child's parent; without proper parental care, subsistence, education, medical or other care necessary for the child's well-being; or without or beyond parental control. Id. § 2622(2)(B). This aspect of the definition of a child in need of guardianship roughly mirrors the definition of CHINS for purposes of a juvenile proceeding in the family division. Compare 14 V.S.A. § 2622(2)(B), with 33 V.S.A. § 5102(3). For either a consensual or nonconsensual guardianship, the resulting guardianship order must address the powers and duties of the guardian, include the expected duration of the guardianship, if known, and provide a family plan addressing matters such as parent-child contact. 14 V.S.A. § 2628.

¶ 16. In addition, the 2014 Act resolved the issues regarding the overlapping jurisdiction of the probate and family divisions when a CHINS proceeding in the family division and a custodial minor guardianship proceeding in the probate division involving the same child are both pending at the same time. The 2014 Act clarified that the probate division has exclusive jurisdiction over minor guardianship proceedings except that when there is an open proceeding in the family division involving custody of the same child, the guardianship proceeding must be transferred to the family division. Id. § 2624(a), (b)(1)(A). When the custodial minor guardianship proceeding is transferred to the family division, the probate judge and superior judge in the family division must confer on the record. Id. § 2624(b)(2)(A). Thereafter, the superior judge may:

> (i) consolidate the minor guardianship case with the pending matter in the Family Division and determine whether a guardianship should be established under [the minor guardianship statute]; or

>    (ii) transfer the guardianship petition back to the Probate Division
>    for further proceedings after the pending matter in the Family
>    Division has been adjudicated.

Id. § 2624(b)(2)(C). If the family division establishes a minor guardianship, the case is transferred

back to the probate division for ongoing monitoring. Id. § 2624(b)(2)(D).[2]

¶ 17.    The second recent legislative enactment that impacts the trial court's options in a

case like this is 2015, No. 170 (Adj. Sess.), enacted in 2016. This legislation grew out of the efforts

of the Best Practices Subcommittee of the Justice for Children Task Force. See Written Testimony

of Pamela Marsh to Senate Committee on Judiciary regarding S.183, 2015-2016 Bien. Sess. (Vt.

Feb. 25, 2016) [hereinafter Marsh Testimony], https://legislature.vermont.gov/Documents/2016/

WorkGroups/Senate%20Judiciary/Bills/S.183/S.183~Pamela%20Marsh~Testimony~2-25-

2016.pdf [https://perma.cc/G4YE-YPHZ]; Permanency for Children in the Child Welfare System:

Hearing on S.183 Before House Comm. on Judiciary, 2015-2016 Bien. Sess. (Vt. Apr. 6, 2016)

(oral statement of Legislative Counsel Brynn Hare). The 2016 Act addresses permanent

guardianships—a subset of minor guardianships that can be granted only by the family division

and are distinct from the consensual and nonconsensual minor guardianships that were the subject

of the 2014 Act.[3]

---

[2]    The 2014 Act also changed the minor guardianship process in other significant ways, from establishing parameters concerning DCF's role in minor guardianship proceedings, 14 V.S.A. § 2634, to providing for direct appeal from minor guardianship proceedings to the Supreme Court, id. § 2633.

[3]    The family division has the sole authority to establish a permanent guardianship as a disposition alternative in a CHINS proceeding, 33 V.S.A. § 5318, or a delinquency proceeding, id. § 5232. See 14 V.S.A. §§ 2660-2667 (provisions related to permanent guardianships for minors). The process and standards for terminating permanent guardianships are different from those that apply to termination of consensual and nonconsensual minor guardianships, and custody of a child reverts to DCF upon termination of a permanent guardianship in the absence of a successor guardian designated in the permanent guardianship order. Compare 14 V.S.A. § 2632 (processes for terminating consensual and nonconsensual guardianships), with id. § 2666 (process for modifying or terminating permanent guardianship).

¶ 18. One goal was to make permanent guardianships "a better option for relatives or other persons having custody under conditional custody orders" and to focus on the best interests of the child "and make it easier to establish permanent guardianships in appropriate cases with children under age 12." Marsh Testimony, at 1. During a hearing before the House Judiciary Committee, the Chief Superior Judge explained, "One of the things this bill does is speaks to the use of permanent guardianships for minors and tries, in some respects, to expand that use as a more viable option available to the courts in these situations." Permanency for Children in the Child Welfare System: Hearing on S.183 Before House Comm. on Judiciary, 2015-2016 Bien. Sess. (Vt. Apr. 12, 2016) (statement of Chief Superior Judge Brian Grearson) [hereinafter Grearson Testimony].

¶ 19. To that end, the 2016 Act expressly acknowledged the benefits of permanent guardianships. In particular, the Legislature included the following purpose statement:

> The creation of a permanent guardianship for minors provides the opportunity for a child, whose circumstances make returning to the care of the parents not reasonably possible, to be placed in a stable and nurturing home for the duration of the child's minority. The creation of a permanent guardianship offers the additional benefit of permitting continued contact between a child and the child's parents.

2016, No. 170 (Adj. Sess.), § 1 (codified at 14 V.S.A. § 2660).

¶ 20. The 2016 Act also substantially changed the standards for establishing permanent guardianships. The 2016 Act removed the prior statutory preference for adoption by eliminating the requirement that the court establish a guardianship only if it found that neither reunification nor adoption was likely within a reasonable time. Id. § 2 (codified at 14 V.S.A. § 2664(a)(2)). The 2016 Act conformed the standards for awarding a permanent guardianship to the most important factor for terminating parental rights—that "[n]either parent is able to assume or resume parental duties within a reasonable time." Id. (codified at 14 V.S.A. § 2664(a)(1)). The 2016 Act also eliminated the requirement that a child subject to permanent guardianship be at least twelve years old. Id. (codified at 14 V.S.A. § 2664(a)(3)). And, it reduced the amount of time a child

9

must live with a proposed permanent guardian from one year to six months. Id. (codified at 14 V.S.A. § 2664(a)(2)). Collectively, these changes increased the viability of (and legislative support for) permanent guardianship as a disposition alternative in CHINS cases.

¶ 21. Although the Legislature eliminated the statutory preference for adoption over permanent guardianships, it also made it clear that permanent guardianships were not a preferred disposition option over termination of parental rights and adoption. In the purpose statement, the Legislature stated, "The Family Division of the Superior Court is not required to address and rule out each of the other potential disposition options once it has concluded that termination of parental rights is in a child's best interests." Id. § 1 (codified at 14 V.S.A. § 2660(b)). In presenting this purpose statement on behalf of the various stakeholders who collectively proposed the legislation, the Chief Superior Judge explained that the purpose statement was designed to "avoid the idea of a hierarchy" among the disposition options following initial disposition that would require a court to consider and rule out permanent guardianship before terminating a parent's rights. Grearson Testimony.

### B. Principles for Guardianship Proceedings

¶ 22. Three important points follow from the changes made in the 2014 and 2016 Acts. First, the family division has a broad range of options as to timing and outcome when a minor guardianship proceeding is transferred to the family division under 14 V.S.A. § 2624. The family division has the discretion to determine whether and when to address the minor guardianship petition relative to the CHINS petition. Pursuant to § 2624(b)(2)(C)(ii), the family division may immediately transfer the minor guardianship proceeding back to the probate division for further proceedings after the family division matter is resolved. Alternatively, it may consolidate the cases pursuant to § 2624(b)(2)(C)(i). If it does so, it may, immediately or later, grant or deny the minor guardianship petition pursuant to 14 V.S.A. §§ 2621-2633. If it grants the minor guardianship, it must then transfer the case back to the probate division for monitoring. Id. § 2624(b)(2)(D). If

10

the court initially consolidates the proceedings, it may prioritize the CHINS proceeding and subsequently transfer the minor guardianship proceeding back to the probate division pursuant to § 2624(b)(2)(C)(ii)—either before or after finally resolving the CHINS case.[4] The court's discretion to establish a minor guardianship is not constrained by DCF's determination in the CHINS action regarding the suitability of the proposed guardian as a custodian, although the court may consider the same factors as DCF in reaching its own determination as to whether a proposed guardian is suitable. See id. § 2626(d) (requiring court to determine that proposed guardian is suitable in consensual guardianship); id. § 2627(c) (requiring court to determine that proposed guardian is suitable in nonconsensual guardianship). In some cases, the court may deny termination of parental rights as not in the child's best interests and instead urge DCF to prepare a proposed case plan calling for a permanent guardianship. Whatever resolution, the court's decision must be internally consistent and be supported by sufficient evidence and reasoning. Second, the law does not establish any hierarchy among the options. The family division has discretion to choose the path most likely to promote each child's best interests.[5] The 2014 Act clarifies which court makes the decisions when both a CHINS petition and a guardianship petition are pending with respect to the same child, but nothing in the statute suggests that in exercising its broad discretion the family division should prioritize one legal framework (custodial minor guardianship versus CHINS, for example) over another. Instead, the statute leaves it to the family division to choose among the various options available to it.

¶ 23. For example, in the context of a recently filed CHINS proceeding in which a suitable guardian seeks a consensual minor guardianship, the court may conclude that the minor

---

[4] The outcome of the CHINS proceeding will obviously affect what, if anything, is left to transfer back to the probate division.

[5] This reference to the child's "best interests" as the touchstone for the family division's exercise of its discretion does not refer to the statutory standard in 33 V.S.A. § 5114 or 15 V.S.A. § 665(b), although the factors relevant to these respective best-interests analyses are likely relevant.

guardianship would address the risk of harm to the child that gave rise to the CHINS petition, would preserve the child's relationship with family or other significant adults, could potentially enable the child to maintain contact with parents who are not presently able to care for the child while still promoting permanency for the child, and would leave the door open to reunification if the parents successfully addressed the challenges that led to the CHINS petition. See 14 V.S.A. § 2626 (establishing process and standards for consensual guardianships in which parent or parents consent to judgment). In this scenario, if the court granted the minor guardianship petition, the CHINS petition would be essentially mooted.

¶ 24.    Alternatively, in a relatively new CHINS proceeding, if a proposed guardian sought to establish a nonconsensual guardianship under § 2627, the court may consolidate the guardianship proceeding with the juvenile matter and give the parent or parents adequate time to access the necessary services and successfully address the alleged or adjudicated parenting deficits in the context of the CHINS case. If the parents were able to reunify, then before issuing its final judgment in the CHINS case, the court could deny the guardianship proceeding on the basis that the child is not "a child in need of guardianship" as defined in § 2622(2), or the court could transfer the unadjudicated guardianship proceeding back to the probate division.. On the other hand, if it became clear that the parents were not likely to be able to reunify, the court might revisit the question of a nonconsensual guardianship as an alternative to a disposition in the context of the CHINS proceeding, or, at disposition, the court might entertain a proposal for a permanent guardianship pursuant to 14 V.S.A. §§ 2660-2667.

¶ 25.    The court may make a different decision in a CHINS case where the minor child has been living with and building attachments in a preadoptive foster family for a significant period of time and the proposed guardian has less of a relationship with the child. The court may transfer the guardianship petition back to the probate division for consideration after final disposition, which may be a termination of the parents' rights that clears the way for adoption. Alternatively,

12

the court may consolidate the guardianship with the juvenile matter and consider both the State's petition for termination of parental rights and the minor guardianship request at the same time. The court may also consider at disposition, pursuant to 33 V.S.A. § 5318(a)(6), a proposal for a permanent guardianship pursuant to 14 V.S.A. §§ 2660-2667.

¶ 26.    These scenarios are provided to highlight various considerations that might point to different approaches, not to direct how a court should exercise its discretion in a particular case. Rather than prioritize one approach over another, the Legislature gave the family division an expansive set of tools in these CHINS/guardianship-petition cases.  The touchstone for the family division's exercise of this broad discretion must necessarily be the well-being of the child.  See 14 V.S.A. § 2626(d)(5) (requiring determination that consensual minor guardianship is in child's best interests); In re F.P., 164 Vt. 117, 121-22, 665 A.2d 597, 600-01 (1995) (explaining that focus of CHINS proceeding is child's welfare and that statute should be interpreted in light of that purpose); see also In re Adoption of B.L.V.B., 160 Vt. 368, 371, 628 A.2d 1271, 1273 (1993) (explaining that in context of adoption statutes, state's primary concern is to promote welfare of children, and application of statutes should implement that purpose).

¶ 27.    Third, the family division also has an obligation to exercise the broad discretion granted by the Legislature.  See, e.g., In re T.S., 144 Vt. 592, 594, 481 A.2d 21, 22 (1984) ("To support a claim of abuse of discretion, a party must show that the court failed to exercise its discretion, or that its discretion was exercised for reasons clearly untenable or to an extent clearly unreasonable.").  And the end that should drive the court's exercise of this broad discretion is, as noted above, the best interests of the child.  As evidenced by the hypotheticals above, the court must make an individualized determination rather than apply a blanket approach.  That makes these cases more challenging to manage.  Once the guardianship petition is transferred to the family division, at the onset of the transfer, and thereafter throughout the case, the trial court must be mindful of the range of options on the table.  It cannot as a matter of course conclude that CHINS

proceedings, or guardianship proceedings, will always take precedence. Instead, informed by the arguments of the parties and its knowledge of the record, the court must conduct an individualized assessment of the best course in a given case. And as circumstances change through the course of a case, on its own initiative or in response to arguments by parties, the court's approach to the alternate paths may shift.

¶ 28. If the court proceeds to disposition or post-disposition modification in the CHINS case, it should be mindful of the possibility that a permanent guardianship might best serve the child's best interests. The court is not required to conduct a thorough review of any permanent guardianship options before granting a petition to terminate parental rights at disposition. See 14 V.S.A. § 2660(b). Nonetheless, if a permanent guardianship is proposed, the court should consider the option, and have a case-specific reason for dismissing it as an option rather than declining to assess the possibility as a matter of course. The Legislature's statement in § 2660(b) that the court need not rule out other potential disposition options in every case once it concludes that termination of parental rights is in the child's bests interests was not intended to diminish the Legislature's recognition in § 2660(a) that permanent guardianships may offer important benefits to minor children.

## C. Guardianship Request in this Case

¶ 29. In this case, after the guardianship was filed in the probate division, the judges from both divisions conferred and held a hearing where the parties were present, including the attorneys for father and for the paternal grandmother. The superior judge ruled that the guardianship matter would remain under the jurisdiction of the probate division and that the family division would keep the probate division informed on the status of the juvenile proceeding. The superior judge indicated that while the termination petition was pending, the guardianship was basically "on inactive status." The probate judge agreed that the guardianship would be inactive in that court

14

pending confirmation from the family division as to whether it could be reopened or would be rendered moot.

¶ 30. On appeal, father contends that the family division erred by essentially putting the guardianship in the probate division on inactive status without any means to reinitiate it and effectively giving priority to the juvenile matter. Father's claims that the family division prevented the probate division from having jurisdiction or improperly impeded the jurisdiction of the probate division are without merit. The court acted in accordance with the terms of the statute.[6] Because there was a pending action in the family division involving the custody of C.B., the guardianship was properly transferred from the probate to the family division. After consultation, the family division transferred the guardianship matter back to the probate division to proceed after the termination petition was resolved, one of the options available under the statute. See id. § 2624(b)(2)(C)(ii). The court did not impermissibly prevent the guardianship petition from proceeding. It acted consistently with the statute and transferred the guardianship petition back to the probate division, to be resumed after the termination petition was heard.

¶ 31. In a related argument, father asserts that the court abused its discretion because it made a blanket decision to never consolidate a guardianship petition with a termination proceeding instead of evaluating the question relative to the facts of this particular case. By using the language "may," the statute plainly gives the superior judge discretion to decide whether to consolidate the guardianship or transfer it back to the probate division. 14 V.S.A. § 2624(b)(2)(C); In re M.S., 2017 VT 80, ¶ 23, 205 Vt. 429, 176 A.3d 1124 (explaining that statutes are interpreted by looking at plain meaning and use of " 'may' indicates [provision in statute] is an option, but not a requirement"). As explained in detail above, the family division has broad discretion in deciding

---

[6] The statute provides that the family division may "consolidate the minor guardianship case with the pending matter in the Family Division" or "transfer the guardianship petition back to the Probate Division for further proceedings after the pending matter in the Family Division has been adjudicated." 14 V.S.A. § 2624(b)(2)(C)(i), (ii).

15

how to proceed and an abuse of discretion is shown where the court has failed to exercise its discretion or the "discretion was exercised for reasons clearly untenable or to an extent clearly unreasonable." In re D.H., 2017 VT 71, ¶ 11, 205 Vt. 281, 173 A.3d 883.

¶ 32.    Here, the record demonstrates that the superior judge in the family division understood there was discretion under the statute regarding the choices for proceeding and exercised that discretion appropriately.  The court acknowledged that the statute allows transfer to the probate division or consolidation.  The court explained that it did not deem consolidation to be an appropriate approach in this case.  The court made some general statements regarding the lack of efficiency in general in consolidating a guardianship with a contested and complex termination proceeding, especially where the guardianship was filed after the termination petition, and indicated that the court would "likely" follow the practice in other cases of transferring the guardianship back to probate.  Certainly, if these statements were interpreted as predeciding future cases, this kind of across-the-board approach would contradict the case-specific discretion granted in 14 V.S.A. § 2624.

¶ 33.    Nonetheless, the court's statements do not indicate that it wholly failed to exercise its discretion in this case or made a general ruling without regard to the particular facts of the case. The court provided a rationale for its approach and acted within its discretion.[7]  At the outset of the hearing, the family division noted that the juvenile case was filed in October 2017 and the termination petition was filed in June 2019.  The court explained that its decision on how to proceed was impacted by factors such as what stage the juvenile proceeding was at when the

---

[7]  Father argues that the court incorrectly thought that it lacked authority to proceed with the guardianship petition.  At the joint conference, the family division suggested that because the child was in DCF custody, the court could not adjudicate the custodial guardianship petition.  It is true that while a CHINS case is pending, the probate division does not have jurisdiction to adjudicate the minor guardianship petition; but it is not the case that the family division lacks such authority.  The Legislature specifically provided that after a minor guardianship proceeding is transferred to the family division, that court may "determine whether a guardianship should be established under this article."  14 V.S.A. § 2624(b)(2)(C)(i).  The statute does not suggest that the court's authority to do so turns on whether the child is in DCF custody in the CHINS proceeding.

16

guardianship case was filed, the child's age, and the length of time the child has been in custody. The court emphasized that the focus was on the "child's needs." Although the court described its rationale in general terms, its reasoning was in accordance with the facts of this case. The court did not fail to exercise its discretion entirely and its decision in this case was reasonable in light of the record evidence. See In re L.R.R., 143 Vt. 560, 562, 469 A.2d 1173, 1175 (1983) ("[T]his Court, on appeal, will not set aside a discretionary ruling if there is a reasonable basis for the lower court's action.").

¶ 34. Father also argues that, at the termination hearing, the court erred in considering only the petition to terminate and not considering an alternative disposition, such as entering an order of permanent guardianship or transferring legal custody to a relative. See 33 V.S.A. § 5318(a)(6), (7).

¶ 35. The Legislature has expressly indicated that the family division is not required to rule out permanent-guardianship possibilities before terminating parental rights. 14 V.S.A. § 2660(b). Moreover, at the termination hearing, father testified that his family was "toxic," and that he did not support paternal grandmother's guardianship petition. Therefore, father has not preserved for appeal a challenge to the trial court's failure to consider a disposition of permanent guardianship with paternal grandmother. Because mother stipulated to termination of her rights and signed a post-adoption contact agreement before the final hearing, neither parent advocated a permanent guardianship with paternal grandmother at the time of the court's TPR decision.

¶ 36. The critical question for the trial court at disposition was whether there was a change in circumstances and, if so, whether termination of father's rights was in C.B.'s best interests. See 33 V.S.A. § 5113(b) (explaining that based on party's motion, court can amend existing disposition based on changed circumstances and in best interests of child). The court here found that there was a change in circumstances due to father's lack of progress and that termination was in C.B.'s best interests, particularly given that father would not be able to parent C.B. within

17

a reasonable period of time. See id. § 5114(a). Father does not challenge those findings or conclusions on appeal.

## IV. CHINS Merits

¶ 37. Father also contends that he was improperly denied standing at the merits stage of the CHINS proceeding and was erroneously not granted counsel until after the initial disposition order issued. There is no merit to father's argument that the court failed to properly assign him an attorney. Father was entitled to assignment of counsel. See 13 V.S.A. § 5232(3) (providing that needy persons in juvenile proceedings are entitled to assignment of counsel "when the court deems the interests of justice require" it); In re L.H., 2018 VT 4, ¶ 11, 206 Vt. 596, 182 A.3d 612 (recognizing that provision of counsel to parents "is required by statute and is an important part of ensuring that termination proceedings are conducted fairly and accurately"). The fact that father was not assigned an attorney earlier in the proceeding was due to father's actions in failing to request or apply for counsel earlier. The record reflects that father was entered as a party in the proceeding in January 2018 after his parentage was established. At that time, the court sent father a notice of the proceeding and a public-defender application. Father was also sent a copy of the merits order and stipulation. Father did not communicate with the court or request an attorney at that time. When the disposition order issued in March 2018, the court sent a copy to father. Father did not submit a request for a public defender until June 2018, at which time he was immediately assigned an attorney.

¶ 38. Father's attempt to challenge the CHINS merits decision is an impermissible collateral attack. The merits decision became final after the initial disposition was entered and no appeal was filed. See 33 V.S.A. § 5315(g) (explaining that CHINS merits decision becomes final after disposition order is issued); id. § 5318(d) (stating disposition is final order). Father cannot now bring a collateral challenge to that final order absent a demonstration that it is void due to lack of jurisdiction or because it was entered in a manner inconsistent with due process of law. See In

18

re C.L.S., 2020 VT 1, ¶¶ 16-17, __ Vt. __, 225 A.3d 644 ("Parties are generally precluded from collaterally attacking a final CHINS merits determination at a later stage of the proceedings."). Here, father's alleged error—that mother could not stipulate to the merits of the CHINS petition without father's agreement—is insufficient to render the decision void.

Affirmed.

FOR THE COURT:

_____
Chief Justice