NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2021 VT 41

No. 2020-302

| | |
|---|---|
| In re Appeal of T.O. & L.O. | Supreme Court |
| | On Appeal from<br>Human Services Board |
| | April Term, 2021 |

Michael J. Donohue, Chair

Cristina Mansfield of Mansfield Law, LLC, Manchester Center, for Appellants.

Thomas S. Donovan, Jr., Attorney General, Montpelier, and Edward M. Kenney, Assistant Attorney General, Waterbury, for Appellee Department for Children and Families.

PRESENT: Reiber, C.J., Robinson, Eaton, Carroll and Cohen, JJ.

¶ 1. **COHEN, J.** T.O. and L.O. (petitioners) are the grandparents of S.O., who has been adjudicated a child in need of care or supervision (CHINS) by the family division of the superior court and is in the custody of the Department for Children and Families (DCF). Petitioners appeal from an order of the Human Services Board concluding that the Board lacked jurisdiction to determine whether DCF failed to comply with certain provisions of state and federal law concerning the care of children by relatives. We affirm.

¶ 2. We begin with a brief overview of the two statutory schemes at issue—the statutes governing the Human Services Board's jurisdiction and the relevant CHINS proceedings. The Legislature established the jurisdiction of the Board, an executive-branch adjudicative body, in 3 V.S.A. § 3091(a), which provides:

An applicant for or a recipient of assistance, benefits, or social services from the Department for Children and Families, of Vermont Health Access, of Disabilities, Aging, and Independent Living, or of Mental Health, or an applicant for a license from one of those departments, or a licensee may file a request for a fair hearing with the Human Services Board. An opportunity for a fair hearing will be granted to any individual requesting a hearing because his or her claim for assistance, benefits, or services is denied, or is not acted upon with reasonable promptness; or because the individual is aggrieved by any other Agency action affecting his or her receipt of assistance, benefits, or services, or license or license application; or because the individual is aggrieved by Agency policy as it affects his or her situation.

¶ 3. Under the juvenile judicial proceedings statutes, shortly after a CHINS petition is filed, the family division must hold a temporary-care hearing to determine whether the child will be returned to the custodial parent, guardian, or custodian, or whether temporary custody will be transferred to someone else, including a noncustodial parent, relative, or DCF. See 33 V.S.A. §§ 5307-08. To aid the court in that determination, at this temporary-care hearing, DCF must provide certain information to the court, including "[s]ervices, if any, provided to the child and the family in an effort to prevent removal"; "[s]ervices which could facilitate the return of the child to the custodial parent, guardian, or custodian"; and "[t]he identity and location of a noncustodial parent, a relative, or person with a significant relationship with the child known to the Department who may be appropriate, capable, willing, and available to assume temporary legal custody of the child." Id. § 5307(e)(1)-(5)(A).

¶ 4. Before informing the court of a person who may be able to assume temporary custody, § 5307 compels DCF to conduct "an assessment of the suitability of the person to care for the child." Id. § 5307(e)(5)(B). This suitability assessment includes "consideration of the person's ability to care for the child's needs," a criminal history record, and a "check of allegations of prior child abuse or neglect by the person or by other adults in the person's home." Id.; see also Department for Children and Families Policy 91, Kinship Care and Collaboration with Relatives 3 (May 2, 2019) [hereinafter Policy 91], https://dcf.vermont.gov/sites/dcf/files/FSD/Policies/

2

91.pdf [https://perma.cc/7PYW-STBB] (mirroring this assessment requirement and its contours). DCF must also "provide information to relatives and others with a significant relationship with the child about options to take custody or participate in the care and placement of the child, about the advantages and disadvantages of the options, and about the range of available services and supports." 33 V.S.A. § 5307(h); see also 42 U.S.C. § 671(a)(29)(A)-(D) (making certain federal aid contingent upon states adopting plans that, among other things, require identification of relatives and provision of information regarding removal and custody). After the temporary-care hearing and resulting temporary-care order, the CHINS process may result in many possible outcomes, including the return of the child to the parents, adoption, or transfer of legal custody to a relative. See 33 V.S.A. § 5318.

¶ 5. With this statutory overview, we turn to the pertinent facts. In July 2018, the State filed a petition alleging that S.O. was CHINS, and the family division held a temporary-care hearing. The court granted temporary custody to DCF, and DCF placed the child with a foster family as the CHINS process unfolded. In October 2019, petitioners, who were licensed foster parents for S.O.'s sibling, requested an amended license to care for S.O. DCF granted petitioners the amended license but declined to place S.O. with them.

¶ 6. In May 2020, petitioners filed a petition for a hearing with the Human Services Board, arguing that DCF refused to comply with the above-noted provisions of state and federal law in failing to notify or assess them for kinship care of S.O. They maintained that this failure represented a decision by DCF to deny them a service in the form of consideration and assessment to serve as a placement for S.O., or a de facto denial of their foster care license for S.O. In response to DCF's motion to dismiss their petition, petitioners also argued that to deny them a Board hearing would amount to a violation of due process.

¶ 7. The Board dismissed the petition for lack of jurisdiction. The Board reasoned that it had jurisdiction over licensing decisions, while petitioners raised claims regarding the child's

3

placement—a matter entrusted to DCF. Because petitioners were granted the amended license they sought, the Board concluded that there was no basis for Board jurisdiction. The Board did not consider petitioners' argument that DCF deprived them of a service created by state and federal law, or petitioners' due process claim.

¶ 8. In this appeal, petitioners argue that the Board has jurisdiction over their petition under 3 V.S.A. § 3091 because they are intended recipients of a "social service" from DCF, which they claim the agency failed to provide. They identify this service as the suitability assessment DCF must conduct under 33 V.S.A. § 5307. Petitioners further argue that the denial of a Board hearing constitutes a violation of procedural due process.

¶ 9. The parties briefed our standard of review as one deferential to the Board. Normally, we extend deference to the Board's decisions. See, e.g., In re E.C., 2010 VT 50, ¶ 6, 188 Vt. 546, 1 A.3d 1007 (mem.). But, here, the Board did not address the question of statutory interpretation at issue in this appeal, namely, whether petitioners are recipients of a social service under § 3091. The Board determined that it lacked jurisdiction because its authority extended to licensing decisions and petitioners raised claims regarding the child's placement, a distinct matter. See In re B.F., 157 Vt. 67, 70, 595 A.2d 280, 281 (1991) (recognizing that DCF, "as legal custodian of a child, has the authority to determine where that child shall live"). The Board did not consider petitioners' argument that they had been denied a service. Thus, there is no agency interpretation requiring deference.

¶ 10. When interpreting a statute, our aim is to discern and effectuate the Legislature's intent. Northfield Sch. Bd. v. Wash. S. Educ. Ass'n, 2019 VT 26, ¶ 13, 210 Vt. 15, 210 A.3d 460. "If the intent of the Legislature is apparent on the face of the statute because the plain language of the statute is clear and unambiguous, we implement the statute according to that plain language." Flint v. Dep't of Labor, 2017 VT 89, ¶ 5, 205 Vt. 558, 177 A.3d 1080. In doing so, we "examine and consider fairly, not just isolated sentences or phrases, but the whole and every part of the

4

statute, together with other statutes standing in pari materia with it, as parts of a unified statutory system." Brown v. W.T. Martin Plumbing & Heating, Inc., 2013 VT 38, ¶ 20, 194 Vt. 12, 72 A.3d 346 (alteration omitted) (quotation omitted). If statutory language is ambiguous, "we consider the statute's subject matter, effects and consequences, as well as the reason for and spirit of the law." Cornelius v. Chronicle, Inc., 2019 VT 4, ¶ 18, 209 Vt. 405, 206 A.3d 710 (quotation omitted).

¶ 11. It is unclear from the record whether DCF assessed petitioners' suitability to care for S.O. Assuming it did not, we hold that petitioners are not "recipients" of a "social service" from DCF as those terms are used in § 3091, and accordingly, they are not entitled to a hearing before the Human Services Board. Our conclusion is based on the plain language of the relevant statutes and further supported by their purposes and effects.

¶ 12. As relevant, § 3091 provides that "[a]n applicant for or a recipient of assistance, benefits, or social services from the Department for Children and Families . . . may file a request for a fair hearing with the Human Services Board." 3 V.S.A. § 3091(a). The sentence that follows similarly makes "[a]n opportunity for a fair hearing" dependent on the presence of "assistance, benefits, or services." Id. Thus, for example, we have reviewed the Board's orders over agency decisions regarding food-stamp benefits, Hall v. Dep't of Soc. Welfare, 153 Vt. 479, 572 A.2d 1342 (1990); Medicaid benefits, In re Landry, 2015 VT 6, 198 Vt. 565, 119 A.3d 455; and developmental disability services, In re R.R., 2019 VT 31, 210 Vt. 88, 210 A.3d 1246.

¶ 13. We specifically reviewed the Board's jurisdiction in Vigario v. Dep't of Soc. Welfare, 140 Vt. 100, 436 A.2d 768 (1981). There, the daughter of a decedent sought to recover from the Department of Social Welfare certain expenses she incurred in arranging for her mother's funeral. Under then-existing 33 V.S.A. § 3101, the Department had to pay for the burial of persons who lacked sufficient assets to cover their own funerals, which included the mother. The only parties eligible to receive such payments, however, were funeral directors and towns required to arrange burials for these persons. Based on the language of § 3091 governing the Board's

5

jurisdiction, we concluded that "the Board would have jurisdiction only if the [daughter was] an 'applicant' for 'assistance' or 'benefits.' " Id. at 103, 436 A.2d at 769. Because the underlying statute made payments available only to funeral directors and towns, the daughter could not receive payments and thus could not be considered an "applicant" under § 3091. Id. We further concluded that the funeral payments did not qualify as "assistance" or "benefits" because they were made for the benefit of the deceased, not relatives, and we observed that "[a]ny financial benefit to the relatives of the deceased [was] only incidental to the purpose of § 3101." Id. at 103-04, 436 A.2d at 769-70.

¶ 14.   Here, the fact that 33 V.S.A. § 5307 compels DCF to assess relatives before informing the family division of their willingness and ability to assume temporary legal custody of a child does not make petitioners recipients of social services under § 3091. This is evident from the plain meaning of "social service," which means "an activity designed to promote social well-being[,] specifically[,] organized philanthropic assistance (such as counseling, job training, or financial support)." Social Service, Merriam-Webster Online Dictionary, https://www.mer riam-webster.com/dictionary/social%20services [https://perma.cc/3TCDP7RV]. Accordingly, as § 5307(e) indicates, DCF may provide "[s]ervices . . . to the child and the family in an effort to prevent removal," and "[s]ervices [to] facilitate the return of the child to the custodial parent, guardian, or custodian." 33 V.S.A. § 5307(e)(2), (4). And as § 5307(h) demonstrates, DCF may provide services to relatives who are granted custody of a child—or are assigned as the placement for a child in DCF custody—to help them care for that child. See id. § 5307(h) (directing DCF to "provide information to relatives and others with a significant relationship with the child about options to take custody or participate in the care and placement of the child . . . and about the range of available services and supports"); see also Policy 91, supra, at 8 (explaining that when DCF places child with relatives, "[DCF] will help the caregiver carry out the plan for family contact (e.g., reimbursing mileage costs, helping with needed supports, and paying for services such as

6

child care)"). But there is a clear distinction between assessing whether a person is suitable to care for a child and providing that person with social services to aid in caring for the child. Petitioners are putting the cart before the horse.

¶ 15. The purpose of the suitability assessment is to help the family division reach the conclusions required in a temporary-care order, in particular, to determine who will assume temporary legal custody of the child during CHINS proceedings if the child cannot be returned to the custodial parent, guardian, or custodian. See 33 V.S.A. §§ 5307-08. Relatives may be eligible for services—perhaps parenting classes or child-care—when, after a suitability assessment and temporary-care hearing, the relatives are granted custody of a child or a child in DCF custody is placed with them. As in Vigario, any benefit relatives receive from the suitability assessment is merely incidental to the purpose of § 5307. 140 Vt. at 104, 436 A.2d at 770.

¶ 16. Moreover, accepting petitioners' contention would result in a radical change in CHINS proceedings without any evidence of legislative intent. The family division is given exclusive jurisdiction over CHINS proceedings, including the decision on temporary legal custody. See 33 V.S.A. § 5103 ("The Family Division of the Superior Court shall have exclusive jurisdiction over all proceedings concerning . . . a child in need of care or supervision . . . ."); id. §§ 5307-08 (providing that family division holds temporary-care hearing and issues temporary-care order). We have nevertheless held that the Human Services Board had jurisdiction over DCF's denial of assistance to a CHINS parent in the form of funding for counseling required in the case plan. In re Kirkpatrick, 147 Vt. 637, 638, 523 A.2d 1251, 1251 (1987). We observed in Kilpatrick that the parent's claim for assistance, "although related to the case plan, was not 'a proceeding' over which the juvenile court had exclusive jurisdiction." Id.

¶ 17. In contrast, were we to hold that the suitability assessment is a social service, the denial or adequacy of which is appealable to the Human Services Board, we would inject the Board into the CHINS decision-making process. If the Board were to determine that DCF did not conduct

7

a suitability assessment, the only logical remedy would be to overturn the § 5308 temporary-care order and direct DCF to conduct the assessment—precisely what petitioners seek here. We find no evidence of legislative intent to make the temporary-care determination susceptible to Board reversal. This is particularly improbable considering that relatives are not necessary parties to the § 5307 temporary-care hearing. See 33 V.S.A. § 5307(c) (designating required persons as child; custodial parent, guardian, or custodian; guardian ad litem; child's attorney; custodial parent's attorney; DCF; and State's Attorney). It would be strange to exclude relatives from a list of necessary parties to the hearing and then grant them the ability to overturn the results of that hearing in another forum. The Legislature does not draft so cryptically.

¶ 18. Petitioners next argue that the denial of a hearing before the Human Services Board is a violation of procedural due process. They maintain that without the opportunity for said appeal, relatives have no procedure to ensure that they are assessed and that the family division has been properly informed of their ability to care for children during a CHINS case. Based on petitioners' arguments and cited authorities, we understand them to raise a procedural due process argument under the Fourteenth Amendment to the U.S. Constitution, not Article 10 of the Vermont Constitution. See Wool v. Office of Prof'l Regulation, 2020 VT 44, ¶¶ 20, 30, __ Vt. __, 236 A.3d 1250 (describing different tests under both constitutional provisions). We conclude that there was no due process violation.

¶ 19. Courts review federal procedural due process arguments in two steps: "the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989) (citations omitted). Assuming without deciding that relatives have a liberty or property interest at stake, our law provides them a procedure to protect any such interest. That procedure is access to the family division, not to the Human Services Board. In 33 V.S.A. § 5102(22)(F), the Legislature allows

8

relatives to seek party status in CHINS proceedings if they are "proper and necessary to the proceedings." See also V.R.F.P. 2(f)(1) (granting family division authority to limit and condition such party's participation). If DCF has not conducted a suitability assessment, before the family division must enter the temporary-care order, 33 V.S.A. § 5308(d) empowers the court to "order the Department to conduct an investigation of a person seeking custody of the child, and the suitability of that person's home, and file a written report of its findings with the court." Relatives can fully apprise the family court of their willingness and ability to care for children in the CHINS process by filing for party status in the case, and they may request that the court order DCF to assess them for custody or placement. See In re E.W., 169 Vt. 542, 726 A.2d 58 (1999) (mem.) (reviewing family division denial of party status under V.R.A.P. 5.1). In addition, we have recognized that the guardianship statutes can create an avenue for people like petitioners to ensure that the family division in the CHINS case takes into account their presence and claims. See 14 V.S.A. § 2624(b); In re C.B., 2020 VT 80, ¶ 16, __ Vt. __, __ A.3d __. However laudable the state and federal legislative goal of promoting the placement of children with relatives, the Human Services Board is not the forum our Legislature created to adjudicate petitioners' perceived failures by DCF to carry out that goal.

Affirmed.

FOR THE COURT:

_____
Associate Justice