VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org



Case No.      22-AP-238

*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

FEBRUARY TERM,    2023

| | |
|---|---|
| In re K.P., Juvenile | }    APPEALED FROM: |
| (D.L, L.L. & D.P, R.P., Grandparents\*) | } |
| | }    Superior Court, Bennington Unit, |
| | }    Family Division |
| | }    CASE NO. 203-10-19 Bnjv |
| |      Trial Judge: Kerry Ann McDonald-Cady |

In the above-entitled cause, the Clerk will enter:

Paternal grandparents, D.L. and L.L.,[1] and maternal grandparents, R.P. and D.P.,[2] both appeal the family division's order denying their motions for party status in their grandchild's juvenile proceeding. On appeal, they raise numerous challenges to the family division's analysis and decision, including that: (1) the family division erred in using the statutory best-interests factors as a guide; (2) the family division failed to consider grandparents' bond with K.P. or the State's failure to comply with statutes or policies regarding kinship placement; and, (3) the family division erred in referring to other avenues of relief available to grandparents. We affirm.

The family division found the following. Soon after juvenile K.P.'s birth in October 2019, the State initiated a petition alleging K.P. was a child in need of care or supervision (CHINS) due to mother's substance abuse.[3] The family division transferred custody to the Department for Children and Families (DCF), and DCF initially placed K.P. with his maternal grandmother. In February 2020, K.P. was removed from maternal grandmother's home because she was allowing mother unsupervised contact with K.P. At four months old, K.P. was placed with a foster family where he has lived since. Mother subsequently stipulated that K.P. was CHINS and the initial disposition plan was for reunification.

---

[1] D.L. is K.P.'s paternal grandmother and L.L. is D.L.'s husband. D.L. learned of K.P.'s birth in October 2020.

[2] R.P. is the father of K.P.'s mother and D.P. is his wife. R.P. was estranged from mother and first learned that K.P. was in DCF custody in February 2020.

[3] At the time the CHINS petition was filed, father was incarcerated, and his paternity was not confirmed. In April 2020, the court confirmed father's paternity based on genetic testing.

In October 2020, maternal grandparents requested K.P. be placed with them in New York and requested that a process be initiated for an Interstate Compact on the Placement of Children (ICPC). An ICPC is required before a juvenile can be placed out of state. Maternal grandparents began writing letters to K.P. and also had video visits with K.P. Mother opposed the placement of K.P. with maternal grandparents. Although maternal grandparents believed that the ICPC process was initiated in October 2020, Vermont DCF did not begin the ICPC approval process until January 2021. New York foster care completed its home study in May 2021 but for unknown reasons New York did not send it to Vermont until January 2022 and the Vermont ICPC Administrator did not receive it until March 2022.

Paternal grandparents also live in New York and contacted DCF seeking contact with K.P. The caseworker met with them and explained that they could be respite care providers but did not explain about the ICPC process. Paternal grandparents had contact with K.P., including having him for overnights at their home approximately fifty times between October 2020 and September 2021. K.P. has a loving relationship with paternal grandparents. In September 2021, father was released from prison and moved in with paternal grandparents. As a result of foster parents' concern about K.P.'s contact with father, paternal grandparents developed a strained relationship with foster parents. Paternal grandparents continued to have limited contact with K.P. but no longer provided respite care.

In April 2021, maternal grandparents filed a petition for a minor guardianship in the probate division. Pursuant to 14 V.S.A. § 2624, the probate division transferred the case to the family division. The family division considered which court should have jurisdiction and transferred the case back to the probate division. 14 V.S.A. § 2624(b)(2)(C)(ii).

In May 2021, following a hearing, the family division terminated the parental rights of mother and father, and transferred legal custody to DCF without limitation as to adoption.

In December 2021, paternal grandparents, D.L. and L.L., and maternal grandparents, R.P. and D.P., moved for party status. Grandparents argued that DCF was not pursuing a permanency option in K.P.'s best interests and they required party status to advocate for placement. To determine whether grandparents were entitled to party status as "proper" or "necessary" to the case, the court considered whether participation of grandparents was in K.P.'s best interests. See 33 V.S.A. § 5102(22) (defining party in juvenile proceeding). The family division looked at the best-interests factors in 33 V.S.A. § 5114 to guide its analysis of K.P.'s best interests. In its evaluation, the court considered K.P.'s relationships with grandparents, foster parents, and other important individuals. The court also considered the stage of the juvenile proceeding and K.P.'s need for permanency. The court concluded that it was not in K.P.'s best interests to give grandparents party status. The family division found that the proceeding had been pending for some time and that adoption by foster parents was a permanency goal in K.P.'s best interests. The court found that a relationship with grandparents would be in K.P.'s interest, but this did not equate to meeting the standard for party status. The court found that grandparents' bonds with K.P. were in the nature of a familial connection and not a parental one, a role filled by foster parents. The court acknowledged that DCF made errors by not formally advising maternal grandparents of the ICPC process, but found the errors were not made in bad faith. The court further explained that although there was a delay that was not caused by grandparents, K.P. could not reside out of state without a completed and approved ICPC. Ultimately, the court denied the motions for party status.

Grandparents moved for permission to take an interlocutory appeal under Vermont Rule of Appellate Procedure 5(b) or a collateral final order appeal under Vermont Rule of Appellate Procedure 5.1. The family division concluded that the motion met the criteria under Rule 5.1 because it conclusively resolved the issue of party status; the issue was separate from the merits and was important because it involved a novel factual situation and raised the question of what, if any, redress was available to the grandparents in the family division for DCF's failure to abide by its own policies; and the decision would be effectively unreviewable on appeal from a final judgment. See In re R.S., 2021 VT 93, ¶ 5 ("[A]n order denying party status in a CHINS case is a collateral final order from which the superior court has discretion to grant permission to appeal if it finds the factors set forth in V.R.A.P. 5.1(a) are satisfied."). The court found that there was a disputed legal question as to whether it applied the appropriate legal procedure in denying the request for party status and granted the motion. See V.R.A.P. 5.1(a)(1)(A). This Court accepted the appeal.

On appeal, both sets of grandparents contend that the family division erred in denying their motions for party status.

The juvenile judicial proceedings statute defines the parties to a juvenile case, and the list does not include grandparents, who are not guardians or custodians. 33 V.S.A. § 5102(22). In this case, grandparents claimed party status as "such other persons as appear to the court to be proper and necessary to the proceedings." Id. § 5102(22)(F). We review a decision regarding a request for party status in a juvenile case for abuse of discretion. See In re E.W., 169 Vt. 542, 543 (1999) (reviewing family court's denial of party status for abuse of discretion).

Both sets of grandparents argue that the family division erred in evaluating their requests for party status by using the best-interests factors in 33 V.S.A. § 5114(a) in its evaluation of whether to grant party status to grandparents. Grandparents contend that the statutory best-interests factors in § 5114(a) are solely for determining whether to terminate parental rights and incorporating those factors in this post-termination case was error.

There was no error. As grandparents acknowledge, the family division has broad discretion in juvenile proceedings to "choose the path" that best promotes a child's best interests. In re C.B., 2020 VT 80, ¶ 22, 213 Vt. 215. The family division determined that a party "whose presence in the adjudication would be in the best interests of the child would be a necessary and proper party." The family division explained that it would therefore use the best interests of the child analysis "to guide" its determination of whether grandparents were "necessary and proper under 33 V.S.A. § 5102(22)(F)." The court did not abuse its discretion in using the statutory best-interests factors to guide its analysis of whether grandparents should be permitted party status as necessary and proper to the juvenile proceeding. Contrary to grandparents' assertion, the family division did not use the factors as a formulaic standard or a limitation, but as a tool for assessing K.P.'s best interests. This is in accordance with our prior cases where we have explained that, even when the statutory factors are not strictly applicable to a question before the family division, they are relevant to the court's exercise of its discretion in determining a child's general best interests. See In re C.B., 2020 VT 80, ¶ 22 n. 5 ("This reference to the child's 'best interests' as the touchstone for the family division's exercise of its discretion does not refer to the statutory standard in 33 V.S.A. § 5114 or 15 V.S.A. § 665(b), although the factors relevant to these respective best-interests analyses are likely relevant.").

Grandparents assert that the court's evaluation of whether they were proper parties was flawed because the court did not consider the strong bond between K.P. and maternal

3

grandparents, grandparents' ability to meet the kinship requirements for placement, or DCF's misapplication of its own rules. Paternal grandparents also assert that the court failed to consider their specialized knowledge about K.P.'s family, including father's medical and mental-health needs. As explained above, the family division acted within its discretion in evaluating whether grandparents were proper and necessary by examining facts related to K.P.'s best interests, including: K.P.'s relationships with both sets of grandparents; K.P.'s adjustment to his current placement and his existing community; K.P.'s young age, time in custody, and need for permanency; and the bonds that K.P. has with grandparents and his foster family. These considerations are appropriate and well within the discretion of the family division. That grandparents would advocate for a different outcome, placing more weight on the importance of kinship placement does not amount to an abuse of discretion. The family division has the discretion to determine a child's best interests and "is not obligated to 'preserve the family' at the expense of a child's best interests." See In re D.S., 2014 VT 38, ¶ 31, 196 Vt. 325 (concluding that the family division did not err in finding that it was not in child's best interests to be placed with grandmother).

There is also no merit to grandparents' assertion that the family division abused its discretion in denying party status because that avenue is the sole means for grandparents to evaluate their claims that DCF failed to comply with several laws. Among other assertions, grandparents contend that DCF did not properly disclose the identity of possible kinship placements to the family division and violated the temporary-care statute by not informing grandparents about options regarding custody of K.P. See 33 V.S.A. § 5307(e)(5)(A) (providing that DCF should disclose to family court identity of possible relatives who may be appropriate to take temporary custody); id. § 5307(h) (stating that DCF "shall provide information to relatives . . . about options to take custody or participate in the care and placement of the child"). Grandparents also argue that DCF did not act in accordance with its own policy on kinship care, which states that DCF should search for relatives and engage with relatives continuously. Grandparents contend that DCF's failures and misrepresentations resulted in the fact that grandparents do not have custody and they should be given party status to prove this.

Even accepting that DCF did not comply with its own policies on kinship placement or the temporary-care statute, grandparents have failed to demonstrate that this failure provides them with a legally enforceable interest in the juvenile proceeding or that the remedy is to provide them with party status.[4] Grandparents' reliance on In re T.O., 2021 VT 41, 215 Vt. 41, is misplaced. In that case, the grandparents sought a hearing before the Human Services Board after DCF declined to place with them their grandchild, who was adjudicated CHINS. This Court held that the Board did not have jurisdiction because CHINS proceedings were in the exclusive jurisdiction of the family division and that nonparties wishing to grieve matters related to placement of a juvenile in DCF custody could seek to intervene in the CHINS proceeding under § 5102(22)(F). In re T.O., 2021 VT 41, ¶ 19. T.O. allows individuals to seek party status in a CHINS proceeding but does not guarantee that every request for party status will be granted. Such requests must still meet the requirements of the statute. Here, the family division properly evaluated grandparents' request and concluded that grandparents did not meet the statutory requirements as necessary and proper to the proceeding.

---

[4] Paternal grandparents assert that the family division improperly placed the burden on them to demonstrate that DCF acted in bad faith to obtain party status. The court's order makes clear that its evaluation of whether to grant party status was not dependent on a showing that DCF acted in bad faith.

4

In a related matter, grandparents argue that the family division improperly discussed other avenues for relief that grandparents may have against DCF for alleged violations of statute or policy. In its decision, the family division noted that it was a court of limited jurisdiction and lacked authority to assess grandparents' general claims regarding DCF's actions or inactions, but noted that the civil division had general jurisdiction over other kinds of claims, including those for monetary damages. It is evident from the court's decision that this dicta did not play a role in the court's analysis of whether grandparents should be granted party status. In sum, the family division properly exercised its discretion based on relevant facts regarding K.P.'s best interests, including his relationship with grandparents, their role in his life, his adjustment to his current placement, the stage of the CHINS proceeding, and K.P.'s young age and need for permanency.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
William D. Cohen, Associate Justice

_____
Nancy J. Waples, Associate Justice

5