NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2021 VT 45

No. 2020-263

| | |
|---|---|
| Ronald Geraw | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Chittenden Unit, |
| | Family Division |
| | |
| Pamela Geraw | January Term, 2021 |

Thomas Carlson, J.

Thomas C. Nuovo of Bauer Gravel Farnham, LLP, Colchester, for Plaintiff-Appellant.

Samantha M. Henchen of Henchen Law Office, PLLC, Colchester, for Defendant-Appellee.

PRESENT: Reiber, C.J., Robinson, Eaton, Carroll and Cohen, JJ.

¶ 1. **REIBER, C.J.** This case involves wife's longstanding efforts to collect money owed to her by husband under a 2013 final divorce order as reduced to a money judgment in 2018. Husband contends that his current assets, including a home and tractor, are exempt from collection under 21 V.S.A. § 681 because he purchased them with workers' compensation settlement funds. If this argument fails with respect to the tractor, husband asserts that the tractor should be exempt under 12 V.S.A. § 2740(19) because it is "reasonably necessary" for his support. Husband further argues that an investment account he holds is a Workers' Compensation Medicare Set-Aside Account (WCMSA) that is also exempt from collection. We affirm.

## I. Prior Litigation

¶ 2.     Husband suffered a work-related injury in 2010 during the parties' marriage. He settled his worker's compensation claim in December 2014, after the parties' divorce became final. He received a lump-sum payment of $350,000 (less $42,112.58 in attorney's fees and expenses) as "compensation for permanent impairment."

¶ 3.     At the time of the parties' 2013 divorce, "[h]usband's sole source of income . . . was temporary workers' compensation benefits, which he expected to terminate at the end of 2014."[1] Geraw v. Geraw, No. 2014-044, 2014 WL 3715005, *1 (Vt. July 24, 2014) (unpub. mem.), https://www.vermontjudiciary.org/sites/default/files/documents/eo14-044.pdf [https:// perma.cc/7EEZ-KMSE]. Because he had insufficient income to pay maintenance, the court focused "on property division in lieu of maintenance to generate income." Id. (quotation omitted). It awarded husband the primary marital asset—the marital home—and ordered him to pay wife $75,275 within nine months or make other arrangements to pay wife that sum. We affirmed the final divorce order on appeal. See id.

¶ 4.     Husband did not pay wife as ordered and he stopped paying the mortgage as of September 2014. See Geraw v. Geraw, No. 2019-041, 2019 WL 3545447, *1 (Vt. July 12, 2019) (unpub. mem.), https://www.vermontjudiciary.org/sites/default/files/documents/eo19-041.pdf

---

[1] In the final divorce order, the court questioned husband's assertion that he would not receive any workers' compensation benefits after he reached his medical endpoint. It queried why husband would not at that point receive a workers' compensation award if he was permanently disabled and unable to work due to a work-related injury. The court observed, however, that husband appeared to be well-acquainted with the workers' compensation system, having received both temporary benefits and permanent lump-sum awards in the past. Because no worker's compensation award was before it, the court did not address this issue further. Had husband received this lump-sum payment during the marriage or disclosed it to the extent he was aware it was forthcoming, it would presumably have been subject to the court's jurisdiction during the divorce proceedings. See 15 V.S.A. § 751(a) ("All property owned by either or both of the parties, however and whenever acquired, shall be subject to the jurisdiction of the court."); id. § 751(b)(8) (providing that, in making property settlement, court may consider all relevant factors, including "[t]he opportunity of each [party] for future acquisition of capital assets and income").

[https://perma.cc/K87F-GUZJ]. Wife moved to enforce the final divorce order and in April 2015, the court modified the final divorce order, by agreement, awarding wife the former marital home and directing that it be sold. The court noted that wife could pursue additional enforcement actions if she were not made whole. Wife netted approximately $7460 from the sale. See id.

¶ 5. Wife then moved to enforce the April 2015 order and collect the deficiency. Husband responded by moving to modify the 2015 order. In December 2018, the court denied husband's motion and awarded wife judgment for the deficiency—$67,815.48 plus interest at the statutory rate. We affirmed this decision on appeal. See id.

## II. Collection Efforts and Order on Appeal

¶ 6. Following our decision, litigation of wife's ongoing collection effort resumed. Husband continued to "drag[] his feet" in responding to wife's requests for discovery of his current income and assets, leading wife to file a motion to compel. The court set a new discovery schedule and at wife's request, scheduled a hearing. Prior to the hearing, wife filed a memorandum in support of her attempt to reach husband's workers' compensation and pension benefits. Husband did not receive a copy of this document before the hearing because it was mailed to an infrequently checked address for husband's attorney.

¶ 7. Following the hearing and the submission of post-hearing memoranda, the court ruled on issues raised by wife's motion to enforce.[2] As set forth below, it rejected husband's assertion that 21 V.S.A. § 681 shielded assets he purchased using workers' compensation

---

[2] Husband complained in his post-trial filing that he was unaware of what issues would be addressed at the hearing and that, had he known, he would have proceeded differently, including submitting proof that third parties held ownership interests in his property. The court acknowledged that wife's pre-hearing filing was somewhat vague and belated, but it found that husband clearly knew long before the hearing (as noted by the court in an October 2019 entry order) that all his assets and income were potentially at issue. In any event, the court explained, it could not make conclusive findings on husband's allegations about third-party interests in his property without these parties being joined in the action and having an opportunity to be heard.

settlement funds and it applied 12 V.S.A. § 2740 to determine the extent to which husband's assets were subject to collection.

¶ 8.    Husband had the following assets. He purchased a home on twenty-five acres in 2015 for $221,500 cash using funds from his worker's compensation settlement. He then conveyed the property to a revocable living trust, subject to a life interest for the benefit of his "partner." The same year, husband purchased with workers' compensation settlement funds a $24,000 Kubota tractor—now worth $15,000—and a 2016 Toyota RAV 4. Husband also owned an unregistered 2001 Ford 150 pickup and a 1980 Chevrolet Camaro, both of which he was awarded in the final divorce order. No evidence was presented as to the value of these vehicles.

¶ 9.    Husband had income of $1732 per month in Social Security Disability Insurance payments and $2140 in other disability/pension benefits from an unspecified source. His income essentially equaled his claimed expenses.

¶ 10.    Husband claimed that he transferred ownership of the tractor to his sister sometime after April 2015 as a loan repayment. He provided no proof of any loans or any ownership documents. The court found that husband had exclusive use and possession of the tractor and he had used it to maintain his home since its purchase. Husband also asserted that he shared ownership of the Camaro with his sister, again as a loan repayment, and that he shared ownership of the RAV 4 and pickup truck with his daughter for unexplained reasons.

¶ 11.    The court did not find husband credible and rejected his testimony. It found that husband had been litigating his liability to wife for seven years after failing to comply with various orders. Along the way, he had tried to insulate all his property from wife's claims by way of transfers to a trust and into alleged shared ownership with his sister and daughter. Husband had a substantial savings account but had never started to fulfill his longstanding obligation to wife. The court found no indication that husband's sister had any use, possession, or benefit from the tractor or Camaro and as noted, there was no documentation of any of the alleged lending or obligation

4

to repay. Based on the evidence presented thus far, and considering the factors in Vermont's fraudulent conveyance statute, 9 V.S.A. § 2288(b), the court stated that it was considering the possibility that husband intended these transfers to hinder, delay, and defraud wife.

¶ 12. The court further found that husband had a local bank account but transferred it to an American Express investment account at some point, allegedly to satisfy Medicare rules. These account statements showed a balance in husband's money market account of nearly $60,000 in May 2018 reduced to $5300 by August 2019; his checking account hovered around $2200.

¶ 13. The court found that no evidence was offered at the hearing as to the amount held on account nor was a specific account identified. As best the court could discern, that was because husband refused to provide such information in longstanding discovery requests. While husband testified that the source of the funds in this unspecified account was another part of his workers' compensation settlement, he did not introduce any documents to support such assertion and the court found husband not credible. The court further noted that husband did not offer any evidence as to how those funds were reasonably necessary for his support, as his current expenses appeared to be met by his current income.

¶ 14. With these findings in mind, the court considered possible statutory exemptions. It rejected husband's assertion that any asset he purchased with workers' compensation settlement funds was exempt under 21 V.S.A. § 681. Section 681 prohibits the assignment of claims for workers' compensation and provides, with an exception not applicable here, that "[c]ompensation and claims therefor shall be exempt from all claims of creditors." The court relied on the plain language of the statute, explaining that it did not mention tracing workers' compensation funds to other assets. The court contrasted this with 12 V.S.A. § 2740(19), where the Legislature had expressly recognized the prospect of tracing benefits. See id. (exempting "property traceable to or the debtor's right to receive, to the extent reasonably necessary for the support of the debtor and any dependents of the debtor," certain enumerated benefits and types of compensation). The court

5

also noted that other statutory provisions specifically allowed garnishment of workers' compensation benefits and even execution in some instances. See 15 V.S.A. §§ 780-790 (providing that both child support and spousal support can be collected by withholding from "workers' compensation or insurance policies of any type" with remedy for spousal support extending only to wage-withholding orders and not to judgment lien and trustee process as with child support).

¶ 15. The court concluded that while § 681 plainly barred "creditors" from obtaining a lien or encumbrance of a pending claim for workers' compensation and the income stream from ongoing workers' compensation payments, this did not extend to assets acquired with those proceeds. The court saw legislative logic behind this approach—it kept creditors out of the workers' compensation award process by preventing liens on claims and direct compensation and it left the prospect of collection against assets to the general protections of 12 V.S.A. § 2740. The court thus concluded that § 681 was not a bar to the relief wife sought with respect to husband's assets purchased with workers' compensation settlement funds.

¶ 16. The court then turned to 12 V.S.A. § 2740, which allows the "goods or chattels of a debtor" to "be taken and sold on execution" with specific exceptions identified by statute. The court concluded that this statute applied to the enforcement of final divorce orders. It noted that there was some authority for the proposition that wife was not a "creditor" and husband was not a "debtor" entitled to the exemptions set forth in § 2740, citing Schwartz v. Haas, 169 Vt. 612, 739 A.2d 1188 (1999) (mem.). It distinguished Schwartz, however, finding that unlike the equitable set-off remedy at issue in that case, wife here sought statutory remedies of writ of execution against nonmarital property and garnishment of benefits. The court concluded that the statutory collection remedies sought by wife remained subject to § 2740.[3]

_____

[3] We note that in its December 2018 order, the court reduced the uncontested amount that husband owed to wife under the divorce order "to a money judgment for a sum certain." The court

6

¶ 17. The court found that husband met his burden of showing some assets were exempt as reasonably necessary, including his income from SSDI and pension sources and his 2016 RAV 4 purchased with workers' compensation settlement funds. See 12 V.S.A. § 2740(19) (exempting from attachment "property traceable to or the debtor's right to receive, to the extent reasonably necessary for the support of the debtor and any dependents of the debtor," certain enumerated benefits and types of compensation). While husband's interest in his home was also clearly traceable to workers' compensation funds, the court could not determine that the entire property was reasonably necessary for husband's support. It appeared that significant acreage could be deemed unnecessary, but it was unknown if the property could be subdivided.

¶ 18. Turning to husband's remaining assets, the court found that husband failed to prove that he had an investment account that was either traceable to his workers' compensation settlement or reasonably necessary for his support. It reasoned that the tractor might be handy, but it was not reasonably necessary for husband's support. It further found that husband failed to prove the value of the Camaro and pickup truck and it thus had no way to determine if these vehicles were wholly, partially, or not-at-all exempt. See id. § 2740(1) (exempting from attachment "debtor's interest, not to exceed $2,500.00 in aggregate value, in a motor vehicle or motor vehicles"); id. § 2740(7) (exempting "debtor's aggregate interest in any property, not to exceed $400.00 in value, plus up to $7,000.00 of any unused amount of the exemptions provided

stated that the order was "a judgment within the meaning of the Rules of Civil Procedure and [was] enforceable as such." Because the order represented a fixed obligation, it was subject to post-judgment interest, which began to accrue in December 2018. See also Pangea Capital Mgmt., LLC v. Lakian, 132 N.E.3d 618, 622 n.2, 624 (N.Y. 2019) (concluding that "judgment of divorce was . . . a final settling of accounts between marital partners with an equitable interest in all marital property" and final divorce order "did not render [wife] a judgment creditor of [husband]" or vice versa, but recognizing that "in some situations one spouse or ex-spouse might be a judgment creditor as to the other," including where one spouse "obtain[s] a money judgment against the other spouse" after spouse defaults in paying money owed under final divorce order (quotation omitted)).

under" certain subsections, including § 2740(1)). The court noted that the value of the tractor, even as a half-interest, would appear to exhaust the catch-all exemption, § 2740(7), in any event.

¶ 19. The court recognized that questions remained about whether wife could secure title to the pickup truck and Camaro given that husband's sister and daughter were not parties and they had not had the opportunity to defend their interests in the vehicles. Likewise, the parties had yet to litigate issues that might arise from any motion that wife might file and issues that might arise in connection with the trust ownership of the land or the investment account. The court explained that it had done its best to respond to wife's claims and it saw no other specific remedy it could issue at this point absent further litigation. It ordered husband to fully comply with discovery within thirty days of its order or be subject to further contempt proceedings.

¶ 20. Husband moved for reconsideration. He argued that his workers' compensation "Compromise Agreement" was submitted at the hearing, which showed that a separate settlement document related to a WCMSA was to be filed. He cited his testimony that money for the WCMSA was being placed into a separate account and he attached to his motion a copy of a December 2015 letter from the Centers for Medicare and Medicaid Services regarding funds for a WCMSA "to pay for future medical items and services that are covered and otherwise reimbursable by Medicare . . . and are related to the claimant's workers' compensation claim." Husband also asserted that his tractor should be exempt because it was akin to a yoke of oxen and should fall within the statutory exemption for such animals.

¶ 21. The court denied the motion. It found that husband essentially asked for another opportunity to submit evidence regarding the investment account even though it had been clear for months that wife was seeking access to recover on her judgment and had been seeking information regarding the account, including through a motion to compel. Husband had every opportunity to show that the account should be exempt and failed to do so in discovery and at the hearing. As to the tractor, the court was unpersuaded that an expensive farm tractor was necessary to maintain

8

husband's home or that it was in any way comparable to essential farm animals, as husband asserted. This appeal followed.

## III. Arguments on Appeal

¶ 22.    We begin with husband's assertion that 21 V.S.A. § 681 exempts from collection any asset he has purchased using workers' compensation settlement funds. According to husband, because the statute exempts "all claims of creditors," it thereby provides "an absolute exemption to workers' compensation benefits and implies that any funds paid out or traceable to monies received as workers' compensation benefits are not attachable by a creditor." He argues that the plain language of the statute supports his interpretation.

¶ 23.    The proper interpretation of § 681 presents a question of law that we review de novo. See Forrett v. Stone, 2021 VT 17, ¶ 12, __ Vt. __, __ A.3d __. "In interpreting this statute, we seek to ascertain and give effect to" legislative intent. Id. ¶ 14 (quotation omitted). "If the statute is unambiguous and its words have plain meaning, we accept the statute's plain meaning as the intent of the Legislature and our inquiry proceeds no further." Doyle v. City of Burlington Police Dep't, 2019 VT 66, ¶ 5, 211 Vt. 10, 219 A.3d 326 (quotation omitted). "[W]e presume that all language in a statute was drafted advisedly," State v. LeBlanc, 171 Vt. 88, 91, 759 A.2d 991, 993 (2000) (quotation omitted), and we will not "read into a statute something which is not there unless it is necessary in order to make the statute effective," State v. O'Neill, 165 Vt. 270, 275, 682 A.2d 943, 946 (1996) (emphasis omitted).

¶ 24.    We reject husband's interpretation of § 681. First, his argument rests on a faulty premise. Section 681 does not provide an "absolute exemption" for workers' compensation funds. As discussed by the trial court above, workers' compensation funds can be reached to satisfy child support and spousal support obligations. See, e.g., 15 V.S.A. §§ 780-790; see also 7 A. Larson et al., Larson's Workers' Compensation § 89.08 (2021) (recognizing "decided trend toward allowing [workers'] compensation to be reached for the benefit of persons, such as spouse, children, or even

9

former spouses, that the employee has in any event an obligation to support" (citing cases)); <u>Hagen v. Hagen</u>, 508 N.W.2d 196, 198 (Mich. App. 1993) (reaching similar conclusion and rejecting construction of similar statute that would "hold that an act passed for the benefit of a[n] [employee] and his [or her] dependents" placed workers' compensation payments "beyond the reach of the dependents it is supposed to support" (emphasis omitted)); <u>Cardenas v. Cardenas</u>, 478 A.2d 968, 970-71 (R.I. 1984) (concluding that law exempting workers' compensation payments "from claims of ordinary creditors" did not prohibit such proceeds from being "reached for the benefit of [spouses] and children whom the employee has an obligation to support," explaining that purpose of general prohibition is "to protect the dependents of the party claiming the exemption" and it "should not be a device to relieve the [employee] from his [or her] obligation to support his [or her] [spouse] and family" (citing cases)). We recognize the distinction between wife's effort to enforce a money judgment and the claims for spousal support at issue in the above cases; we cite these cases only to emphasize the inaccuracy in husband's assertion that workers' compensation benefits are absolutely exempt.

¶ 25. More importantly, husband's interpretation is at odds with the plain language of the statute. Section 681 excludes "<u>compensation</u> or claims therefor" from "all claims of creditors." 21 V.S.A. § 681 (emphasis added.) It makes no mention of tracing assets purchased with workers' compensation settlement funds and no such language can be reasonably implied. The Legislature plainly intended to protect an injured worker's income stream and his or her right to secure such income stream from creditors, not to protect that person's assets. Where the Legislature has intended to exempt property traceable to the receipt of certain benefits, it has said so explicitly. See, e.g., 12 V.S.A. § 2740(19). By omitting such language from § 681, the Legislature obviously

left the question of a creditor's right to various assets to the specific provisions set forth in 12 V.S.A. § 2740.[4]

¶ 26.    Certainly, a WCMSA would appear to be encompassed within the plain language of § 681 and exempt from collection.  A WCMSA "is a financial agreement that allocates a portion of a workers' compensation settlement to pay for future medical services related to the workers' compensation injury, illness, or disease."    Workers' Compensation Medicare Set Aside Arrangements,  Center  for  Medicare  &  Medicaid  Services,  https://www.cms.gov/ Medicare/Coordination-of-Benefits-and-Recovery/Workers-Compensation-Medicare-Set-Aside-Arrangements/WCMSA-Overview [https://perma.cc/VL4V-M67A].   These funds can only be used "to pay for medical treatment or prescription drugs related to [a claimant's] [workers' compensation] claim, and ONLY if the expense is for a treatment or prescription Medicare would cover," even if the person is "not yet a Medicare beneficiary."   Self-Administration Toolkit for Workers' Compensation Medicare Set-Aside Arrangements § 4 Center for Medicare & Medicaid Services,        https://www.cms.gov/Medicare/Coordination-of-Benefits-and-Recovery/Workers-Compensation-Medicare-Set-Aside-Arrangements/Downloads/Self-Administration-Toolkit-for-WCMSAs-Version-1_3.pdf [https://perma.cc/X3P9-RRC8]; see also WCMSA Reference Guide v.3.2   at   2.1   (October   2020),   Center   for   Medicare   &   Medicaid   Services, https://www.cms.gov/files/document/wcmsa-reference-guide-version-32.pdf    [https://perma.cc/ 6PGF-VBUZ] (explaining that workers' compensation "is a primary payer to the Medicare program for Medicare beneficiaries' work-related illnesses or injuries, and "[i]f a Medicare beneficiary has [workers' compensation] coverage, providers, physicians, and other suppliers must bill [workers' compensation] first").

---

[4] Because it is not raised on appeal, we do not decide here if assets purchased with workers' compensation funds should be evaluated under a particular subsection of 12 V.S.A. § 2740(19) or evaluated under the provision applicable to the type of asset at issue, such as a motor vehicle.

¶ 27. This carries out the requirements of federal law. See WCMSA Reference Guide at 2.1 (explaining that to comply with federal law, "Medicare may not pay for a beneficiary's medical expenses when payment has been made or can reasonably be expected to be made under a workers' compensation plan"). Thus, "[a]ny claimant who receives a [workers' compensation] settlement, judgment, or award that includes an amount for future medical expenses must take Medicare's interest with respect to future medicals into account." Id. at 3.0; see also In re Arellano, 524 B.R. 615, 621-22 (M.D. Penn. 2015) (characterizing WCMSA payment as establishing "a trust for the benefit of medical providers," and concluding that debtor held "funds as trustee for the benefit of his medical providers" and funds could not be reached for benefit of creditors).

¶ 28. Pursuant to a letter that husband submitted with his motion for reconsideration, he is self-administering his WCMSA. Thus, he is required to place WCMSA funds in an interest-bearing account and he is not allowed to use the funds in the account for "any purpose other than payment of future medical care that is Medicare covered and is related to the workers' compensation claim." See WCMSA Reference Guide at 17.2 ("You must deposit the total WCMSA amount (future medical treatment and future prescription drug treatment) in an interest-bearing account, separate from any other account such as personal savings or checking.").

¶ 29. Notwithstanding the discussion above, the general question of whether a WCMSA account can be attached is not properly before us. Husband argues that there is no credible evidence to support the finding that the funds in his bank account did not come from his workers' compensation settlement to be used to fund the WCMSA. But husband has this backward. He had the burden of establishing an exemption and he failed to meet his burden. Significantly, there was no evidence identifying any particular bank account nor was there any evidence about the source or amount of any funds in any such account. As the court found, husband failed to produce such evidence to wife in discovery. Husband did not even provide this information in his motion to reconsider. To the extent husband testified that he placed WCMSA money in an account, the

court found him not credible, and he provided no detail whatsoever about any particular account. Thus, even assuming that a WCMSA would be exempt from wife's collection efforts, the court did not err in finding that husband failed to establish that he had such an account. As the court recognized, new issues might arise when wife sought to actually collect various assets, including concerns related to a WCMSA account. There is simply no information in the record here, however, to show that husband has any particular bank account that is a WCMSA.

¶ 30. Finally, we turn to husband's alternative argument concerning the tractor. Husband contends that we should review de novo the court's determination that the tractor is not reasonably necessary for his support under 12 V.S.A. § 2740(19). He argues that the statute must be liberally construed and that it should encompass his tractor because he needs it to plow his driveway, collect firewood, and otherwise maintain his property.

¶ 31. We need not consider, as a threshold matter, if 12 V.S.A. § 2740(19) should apply to husband's purchase of a tractor using workers' compensation settlement funds. Assuming for the sake of argument that it does apply, the court did not err in finding that the tractor was not reasonably necessary for husband's support. Contrary to husband's assertion, this is a matter for the court's discretion and not a question of law. The court determined that, while the expensive tractor might be handy, it was not reasonably necessary for husband's support. See Licursi v. Sweeney, 157 Vt. 599, 602, 603 A.2d 342, 344 (1991) (explaining that "[t]he purpose of [§ 2740] is to afford debtors protection from the loss of property specified by the Legislature as essential to living and working"); see also Matter of Carmichael, 100 F.3d 375, 380 (5th Cir. 1996) (interpreting similar language in bankruptcy context and observing that bankruptcy court's "obligation to determine the extent to which funds are necessary for the support of the debtor and his dependents work[s] as a safeguard to prevent debtors from stashing away assets in fraud of creditors, thereby ensuring that the proverbial shield cannot be used as a sword"). The trial court considered and rejected husband's arguments about his need for the tractor and we leave it to the

13

factfinder to weigh the evidence. See, e.g., <u>Coburn v. Frank Dodge & Sons</u>, 165 Vt. 529, 533, 687 A.2d 465, 468 (1996) ("[T]he weight of the evidence is not reviewable by this Court on appeal."). While husband disagrees with the court's decision, he fails to show any abuse of discretion. See, e.g., <u>Meyncke v. Meyncke</u>, 2009 VT 84, ¶ 15, 186 Vt. 571, 980 A.2d 799 (mem.) (explaining that arguments which amount to nothing more than disagreement with court's reasoning and conclusion do not make out case for abuse of discretion).

<u>Affirmed</u>.

FOR THE COURT:

_____
Chief Justice

14