NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2021 VT 89

No. 2021-106

| | |
|---|---|
| In re Guardianship of S.O. | Supreme Court |
| (L.O. and T.O., Appellants) | |
| | On Appeal from |
| | Superior Court, Bennington Unit, |
| | Probate Division |
| | |
| | September Term, 2021 |

D. Justine Scanlon, J.

Sarah Star, P.C., Middlebury, for Petitioners-Appellants.

Thomas J. Donovan, Jr., Attorney General, Montpelier, and Jody A. Racht, Assistant Attorney General, Waterbury, for Respondent-Appellee Department for Children and Families.

PRESENT: Reiber, C.J., Robinson,[1] Eaton, Carroll and Cohen, JJ.

¶ 1. **COHEN, J.** Grandparents appeal from the probate division's dismissal of their petition for guardianship of S.O. They argue that: the court should have held a hearing and addressed the merits of their petition; the Department for Children and Families (DCF) violated their due process rights by moving to dismiss the petition; and if there had been a merits hearing, they would have shown that they were suitable guardians and that a nonconsensual custodial guardianship was in S.O.'s best interests. We affirm.

---

[1] Justice Robinson was present for oral argument but did not participate in this decision.

¶ 2. The record indicates the following. S.O. was born in July 2018 and she was taken into DCF custody shortly thereafter. S.O. has been in the same foster home essentially since birth. On October 21, 2020, S.O.'s biological mother voluntarily relinquished her residual parental rights in S.O., subject to a post-adoption contact agreement. Mother agreed that it was in S.O.'s best interests that her rights be terminated, that S.O. be freed for adoption, and that legal custody and all residual parental rights be transferred to DCF without limitation as to adoption. The court terminated father's residual parental rights the same day. Neither parent appealed from these decisions, and the orders became final on November 20, 2020.

¶ 3. Meanwhile, on October 15, 2020, grandparents filed materials in the probate division seeking a minor custodial guardianship of S.O under 14 V.S.A. § 2623. They alleged that one or more of S.O.'s parents were incompetent or unsuitable to have custody; mother consented to the guardianship; and grandparents indicated that father's position was unknown. See 14 V.S.A. § 2622(2)(A)(ii) (defining "[c]hild in need of guardianship" in relevant part as "child who the parties consent is in need of adult care because . . . [a] custodial parent's physical or mental health prevents the parent from providing proper care and supervision for the child"). Grandparents noted that S.O. was in DCF custody and that a termination-of-parental-rights hearing was scheduled for October 21, 2021. The probate-division clerk directed grandparents to file other necessary materials, which they did on October 29, 2020. Grandparents did not file a certificate of service until November 13, 2020; DCF indicated it was served with a copy of the petition on November 9, 2020.

¶ 4. Upon receiving the petition, DCF filed a motion in the family division asking it to confer with the probate division regarding jurisdiction over the guardianship petition. See 14 V.S.A. § 2624(b)(1)(A) (requiring that "custodial minor guardianship proceeding brought in the Probate Division" be transferred to "Family Division if there is an open proceeding in the Family Division involving custody of the same child who is the subject of the guardianship proceeding in

2

the Probate Division."); id. § 2624(b)(2)(A) (providing that, when transfer of guardianship petition to family division occurs under § 2624(b)(1)(A), probate and family division judges must "confer regarding jurisdiction over the proceeding"). The family division indicated that it would do so. Grandparents, through counsel, then filed a motion several days thereafter asking the probate division to consolidate the guardianship petition with the pending family division case.

¶ 5. The family and probate division judges conferred on the record on December 1, 2020, and the family division judge issued an entry order that day recounting what was decided. As set forth in the order, the probate division judge would transfer the guardianship petition to the family division as required by statute and, exercising its discretion, the family division judge would transfer the petition back to the probate division for further proceedings after the pending matter in the family division was adjudicated. See id. § 2624(b)(2)(C)(ii) (authorizing this course of action). The family division judge found that this approach served S.O.'s best interests and welfare as it provided the clearest path to achieving permanency with the goal of adoption. The probate division issued a similar order summarizing the conference on December 2.

¶ 6. On December 8, grandparents requested a status conference. They asked the family division to allow them to present evidence and argument on why the guardianship petition should be consolidated with the juvenile proceeding, and they asserted that S.O.'s best interests required considering them as a permanency placement option.

¶ 7. Two days later, the family division issued an entry order transferring the guardianship petition back to the probate division. It recounted the procedural history of this case and the juvenile proceedings. It found that S.O. had been with her current foster parents essentially since birth and that she loved and was bonded with her foster parents. The family division judge determined that S.O.'s best interests were not served by consolidating the guardianship petition with the family proceeding and determining if a guardianship should be established. It cited In re C.B. in support of its conclusion. See 2020 VT 80, ¶ 25, __ Vt. __, 249 A.3d 1281 (recognizing

3

that in determining how to address transferred guardianship petition and assess what course of action serves child's best interests, family division may consider whether "the minor child has been living with and building attachments in a preadoptive foster family for a significant period of time and [whether] the proposed guardian has less of a relationship with the child," and "may transfer the guardianship petition back to the probate division for consideration after final disposition, which may be a termination of the parents' rights that clear the way for adoption."). In transferring the petition back to the probate division pursuant to 14 V.S.A. § 2624(b)(2)(C)(ii), the family division provided copies of its orders concerning the termination of parents' rights.

¶ 8. The probate division then scheduled a February 2021 hearing on grandparents' guardianship petition. DCF moved to dismiss the petition, arguing that grandparents' request could not be fulfilled because it did not fit within either type of guardianship over which the probate division had jurisdiction. DCF explained that 14 V.S.A. § 2626 required parental consent to a guardianship and parents no longer had the right to consent as their residual parental rights had been terminated. It asserted that § 2627 allowed for consideration of a nonconsensual guardianship only in situations in which a parent had not lost residual parental rights and a child needed a guardian because of parental abandonment, abuse, or neglect, and it maintained that those circumstances were clearly not present here. DCF thus argued that the guardianship petition should be dismissed without a hearing on the merits.

¶ 9. Grandparents opposed the motion. They argued that the probate division should decide their petition because it remained pending and S.O. had not yet been adopted. They maintained that S.O. was still "a child in need of guardianship" as defined in 14 V.S.A. § 2622(B) because she was abused or neglected by her parents and was now "a ward of the State." Grandparents further asserted that mother's consent to the guardianship petition remained valid because mother consented before her residual parental rights were terminated; they argued that father "did not oppose" the guardianship petition. According to grandparents, the only question

4

for the probate division was "whether the guardians [were] suitable, and whether the guardianship [was] in [S.O.]'s best interests."

¶ 10. The probate division granted DCF's motion to dismiss. It explained that at the time the guardianship petition was transferred back to the probate division, both parents' residual rights had been terminated, no appeals had been taken, and all residual parental rights had been transferred to DCF. The court was unpersuaded by grandparents' argument that S.O. remained in need of guardianship under § 2622(2). It found that neither parent was a "custodial parent" as defined by § 2622(3) at the time the guardianship petition was filed because neither was providing routine daily care and control of S.O. It further found that mother's consent to a guardianship was mooted by the termination of her residual parental rights and that father's failure to object to the petition was not the equivalent of consent. The court added that under § 2626(b), a consensual custodial guardianship required the parties to enter into a written agreement, which the court would be required to approve at a hearing on the petition, addressing the responsibilities of the guardians and the parents, the expected duration of the guardianship, parent-child contact, and parental involvement in decision-making. There could be no such agreement here because parents no longer had any parental rights or authority to agree to the terms required by statute or to enter into such an agreement.

¶ 11. The court recognized our recent decisions discussing in detail the array of options available to the family division when a minor guardianship is transferred from the probate division, and it cited our observation that "[t]he outcome of a CHINS proceeding will obviously affect what, if anything, is left to transfer back to the probate division." In re C.B., 2020 VT 80, ¶ 22 n.4. Given that parents' rights had been terminated and all residual parental rights had been transferred to DCF without limitation to adoption, the court found that there was no relief it could grant to grandparents and it dismissed their guardianship petition. This appeal followed.

5

¶ 12. Grandparents argue on appeal that the probate division should have addressed the merits of their petition because S.O. remained in need of a guardianship. They no longer appear to argue that they satisfy the criteria for a consensual guardianship. Instead, they contend that the probate division could have established a nonconsensual guardianship. They reiterate their argument that S.O. is a "[c]hild in need of a guardianship" because she is "[a] child who is abandoned or abused by [her] parents" and/or is "without proper parental care, subsistence, education, medical, or other care necessary for [her] well-being." 14 V.S.A. § 2622(2)(B)(i), (ii). Grandparents maintain that S.O. satisfied this definition when she was taken into DCF custody and that she remains an abused and neglected child in need of a guardianship to some undefined point.

¶ 13. This appeal presents questions of law, which we review de novo. Geraw v. Geraw, 2021 VT 45, ¶ 23, __ Vt. __, 257 A.3d 847. In construing the guardianship statutes at issue, we seek to implement legislative intent. In re Mountain Top Inn & Resort, 2020 VT 57, ¶ 27, __ Vt. __, 238 A.3d 637 (quotation omitted). "Where the Legislature's intent can be ascertained from the plain meaning of the statute, we interpret the statute according to the words the Legislature used." Herald Ass'n., Inc. v. Dean, 174 Vt. 350, 355, 816 A.2d 469, 474 (2002). As set forth below, we conclude as a matter of law that grandparents are not entitled to a consensual or nonconsensual guardianship under the plain language of 14 V.S.A. §§ 2626 and 2627. The probate division therefore properly granted DCF's motion to dismiss.

¶ 14. We begin with an overview of the purpose and policies underlying the minor guardianships at issue in this case.[2] The Legislature has indicated that, while "[i]t is presumed that

---

[2] We are not here concerned with the establishment of a permanent guardianship for minors governed by 14 V.S.A. §§ 2661-2667. The family division, not the probate division, has the "sole authority" to establish this type of guardianship, In re C.B., 2020 VT 80, ¶ 17 n.3, and it did not do so here. See also 14 V.S.A. § 2664(a) (authorizing family division to establish permanent guardianship); 33 V.S.A. § 5318(a)(6) (providing that, "[a]t disposition, the [family division] shall make such orders related to legal custody for a child who has been found to be in need of care and

the interests of minor children are best promoted in the child's own home," "guardianship provides a process through which parents can arrange for family members or other parties to care for [their] children" when parents are "temporarily unable" to do so. 14 V.S.A. § 2621(1) (stating that Article 1, "Guardians of Minors," which governs establishment of consensual and nonconsensual minor guardianships, "shall be construed in accordance" with this and other stated purposes of Act). "Decisions about raising a child made by a person other than the child's parent should be based on the informed consent of the parties." Id. § 2621(3). "When the informed consent of the parents cannot be obtained, parents have a fundamental liberty interest in raising their children unless a proposed guardian can show parental unsuitability by clear and convincing evidence." Id. § 2621(4).

¶ 15. For consensual guardianships, parents and proposed guardians must submit an agreement that addresses the division of responsibilities between parents and guardians, the "expected duration of the guardianship, if known," "parent-child contact and parental involvement in decision making." Id. § 2626(b)(3), (4); see also id. § 2621(6) ("It is in the interests of all parties, including the children, that parents and proposed guardians have a shared understanding about the length of time that they expect the guardianship to last, the circumstances under which the parents will resume care for their children, and the nature of the supports and services that are available to assist them."). If the probate division grants a petition for guardianship, its order must address: a guardian's powers and duties consistent with those identified in id. § 2629; "the expected duration of the guardianship, if known;" a "family plan" that is "consistent with the parties' agreement" for consensual guardianships or that includes "at a minimum, provisions that address parent-child contact" for nonconsensual guardianships; and "the process for reviewing the order." Id. § 2628(b)(1)-(4). Recognizing the temporary nature of these types of guardianships,

supervision as the court determines are in the best interest of the child, including . . . [a]n order of permanent guardianship pursuant to 14 V.S.A. § 2664").

7

the statutory scheme allows a parent to "file a motion to terminate a guardianship at any time." Id. § 2632(a).

¶ 16. Grandparents plainly fail to satisfy the statutory requirements for a consensual guardianship, and they do not appear to argue otherwise. Mother was not a "custodial parent" at the time her consent was given, even assuming that her consent could somehow survive the termination of her parental rights, and grandparents never obtained father's consent. See id. § 2622(2)(A)(ii) (defining "[c]hild in need of guardianship" in relevant part as "[a] child who the parties consent is in need of adult care because . . . [a] custodial parent's physical or mental health prevents the parent from providing proper care and supervision for the child" (emphasis added)); id. § 2622(3) (defining "[c]ustodial parent" as "a parent who, at the time of the commencement of the guardianship proceeding, has the right and responsibility to provide the routine daily care and control of the child"); id. § 2626(a) (requiring consent signed by "parents verifying that the parent or parents understand the nature of the guardianship and knowingly and voluntarily consent to the guardianship."). Following the termination of their parental rights, moreover, parents have no ability to enter into the type of agreement required by 14 V.S.A. § 2626(b) for establishment of a consensual guardianship.

¶ 17. Grandparents similarly cannot satisfy the requirements for establishment of a nonconsensual guardianship under 14 V.S.A. § 2627. A " '[n]onconsensual guardianship' means a guardianship with respect to which: (A) a parent is opposed to establishing the guardianship; or (B) a parent seeks to terminate a guardianship that the parent previously agreed to establish." Id. § 2622(4)(A), (B). Grandparents would need to establish by clear and convincing evidence that S.O. is "in need of guardianship" as defined in 14 V.S.A. § 2622(2)(B), meaning, as relevant here, that she is "[a] child who is: (i) abandoned or abused by [her] parent[s]" or "(ii) without proper parental care, subsistence, education, medical, or other care necessary for [her] well-being."

¶ 18. Grandparents cannot make the necessary showing here. At the time that the guardianship petition was transferred back to the probate division for consideration, parents' residual rights in S.O. had been terminated. Parents thus have no ability to either consent to or oppose the guardianship, a point grandparents appear to concede. A "nonconsensual guardianship" is by definition a guardianship that a parent opposes. 14 V.S.A. § 2622(4)(A). Parents' inability to oppose the guardianship is fatal to a request for a nonconsensual guardianship here. A nonconsensual guardianship is only appropriate, moreover, when a proposed guardian can make a showing sufficient to overcome parents' "fundamental liberty interest in raising their children." Id. § 2621(4). Parents no longer possess a fundamental liberty interest in raising their children here. This type of guardianship is inapplicable under the circumstances here.

¶ 19. This conclusion is consistent with a commonsense interpretation of a "[c]hild in need of guardianship" defined in § 2622(2)(B). The statute speaks of a child's current status, using the word "is," which we construe as indicating a child's status at the time the probate division considers the guardianship petition. Where the Legislature intends to apply a different timeframe, it has said so explicitly. See id. § 2622(3) (defining "[c]ustodial parent" as "a parent who, at the time of the commencement of the guardianship proceeding, has the right and responsibility to provide the routine daily care and control of the child." (emphasis added)).

¶ 20. In this case, parents' rights have been terminated and DCF holds those rights. S.O. is not at this point a child who needs a guardianship because her parent is abusing or neglecting her. It would be absurd to conclude otherwise. It would also upset the process created by the Legislature, which allows the family division to decide how to best treat a guardianship petition filed while there is a pending juvenile proceeding involving the same child. If a child remained an abused or neglected child under § 2622(2)(B) notwithstanding the termination of parents' rights, the probate division could issue orders contrary to those issued by the family division, interfering with the family division's ability to engage in permanency planning and undercutting

9

the process created by the Legislature to "resolve[] the issues regarding the overlapping jurisdiction of the probate and family divisions" in cases like this one. In re C.B., 2020 VT 80, ¶ 16; see also 33 V.S.A. § 5321 (providing that "[u]nless otherwise specified therein, an order . . . transferring legal custody or residual parental rights and responsibilities of a child to [DCF] pursuant to [33 V.S.A. §] 5318(a)(4) or (5) . . . shall be for an indeterminate period and shall be subject to periodic review at a permanency hearing" and "[a]t the permanency hearing, the Court shall determine the permanency goal for the child and an estimated time for achieving that goal").

¶ 21.    As reflected above, the types of guardianships provided for in 14 V.S.A. §§ 2626 and 2627 contemplate a transfer of parental rights and responsibilities to a guardian when parents are "temporarily unable to care for their children" with the goal of the eventual return of those rights and responsibilities to parents. See 14 V.S.A. § 2621(1). This understanding is reflected in our discussion in In re C.B., 2020 VT 80, ¶¶ 23-24 of the various ways in which minor custodial guardianships might work in connection with a pending juvenile case. We explained there that a minor guardianship, if established prior to a CHINS determination, could moot out a CHINS case, or a pending involuntary guardianship petition could similarly become moot if parents "were able to reunify" with a child before the court issued its final judgment in the CHINS case. Id. We also noted that a court might consider a guardianship "as an alternative to a disposition in the context of the CHINS proceeding," or it "might entertain a proposal for a permanent guardianship pursuant to 14 V.S.A. §§ 2660-2667" "at disposition." Id.

¶ 22.    None of those scenarios are possible here. The court terminated parents' rights and transferred those rights to DCF without limitation as to adoption. The family court declined to consolidate the guardianship petition with the juvenile case, concluding that it was not in S.O.'s best interests to do so. We are thus left with the scenario we recognized in both C.B. and A.M.: that under circumstances such as these, there is nothing left for the probate division to address.

10

See In re C.B., 2020 VT 80, ¶¶ 22 n.4, 25 (recognizing that "in a CHINS case where the minor child has been living with and building attachments in a preadoptive foster family for a significant period of time and the proposed guardian has less of a relationship with a child," family division "may transfer the guardianship petition back to the probate division for consideration after final disposition, which may be a termination of the parents' rights that clears the way for adoption" and acknowledging that "[t]he outcome of the CHINS proceeding will obviously affect what, if anything, is left to transfer back to the probate division."); In re A.M., 2020 VT 95, ¶ 20, __ Vt. __, 246 A.3d 419 (affirming trial court's decision to address TPR petition before entertaining voluntary guardianship petitions where family division informed parties that "if parents' rights [were] terminated, a transfer of the guardianship cases back to the probate division w[ould] not be needed, as the parties will no longer have any right to agree or oppose any guardianship" (quotation omitted)).

¶ 23.    Grandparents offer no persuasive argument to the contrary. As reflected above, we agree with grandparents that a guardianship may be appropriate for a child who has been taken into DCF custody and/or been adjudicated as a child in need of care or supervision in the family division.[3] See In re C.B., 2020 VT 80, ¶¶ 23-25 (describing various scenarios in which consensual or nonconsensual guardianship might be appropriate in connection with pending juvenile case). It does not follow from this proposition, however, that a custodial guardianship remains appropriate once there has been a final disposition order in the family division terminating parents' rights and transferring those rights to DCF without limitation as to adoption. We reject grandparents'

---

[3] We do not read the probate division's decision to hold, as grandparents suggest, that a nonconsensual guardianship will never be appropriate for a child who has been adjudicated CHINS. While not particularly clear, its reference to a "custodial parent" appears to relate to parents' request for a consensual guardianship. See 14 V.S.A. § 2622(3) (defining "[c]ustodial parent"); id. § 2622(2)(A)(ii) (in context of consensual guardianship, "child in need of guardianship" means "[a] child who the parties consent is in need of adult care because . . . [a] custodial parent's physical or mental health prevents the parent from providing proper care and supervision for the child"). In any event, our review here is de novo and we reject that proposition.

11

assertion that the transfer of all parental rights to DCF without limitation as to adoption "has no impact" on whether a child is in need of guardianship. As reflected above, we have expressly recognized the opposite to be true. See id. ¶¶ 22 n.4, 25; In re A.M., 2020 VT 95, ¶¶ 20-22 (upholding family division's decision to address TPR petition before considering guardianship petitions where family division specifically informed parties termination of parents' rights would render guardianship petitions moot).

¶ 24. The statutory provisions cited by grandparents offer no insight into the proper interpretation of "[n]onconsensual guardianship" in 14 V.S.A. § 2622(4) or "[c]hild in need of guardianship" under id. § 2622(2)(B)(i) or (ii). We do not see how the fact that children in DCF custody have a right to a hearing before being placed out of state under 33 V.S.A. § 5926 supports the establishment of a nonconsensual guardianship here, or how the family division's express authority to create a permanent guardianship at disposition under 33 V.S.A. § 5318(a)(6) demonstrates that minor custodial guardianships remain viable under a different article of Title 14 following the termination of parents' rights. Similarly, we cannot see how the fact that DCF, on behalf of a child, or a child who is at least 14 years old, may move for reinstatement of parental rights if certain criteria are satisfied, see 33 V.S.A. § 5125(a), has any bearing on our conclusion here. None of these provisions show that a consensual or nonconsensual custodial guardianship under 14 V.S.A. §§ 2626 or 2627 remains available in this case or as a general matter once parents' rights have been terminated and all rights transferred to DCF without limitation as to adoption.

¶ 25. We are equally unpersuaded by grandparents' assertion that, in the event S.O. is not adopted, there may be a process available in the probate division by which they might be able to eventually petition to adopt S.O. No adoption petition is before us. Grandparents speculate that, if an adoption petition were submitted and then denied, a court might appoint them as the child's custodian or guardian, and if that were to occur, they might then become eligible to petition to adopt the child themselves after six months of acting as the child's custodian. They question

12

whether the probate division will be able to accurately assess whether a future adoption is in S.O.'s best interests if it does not consider the merits of their guardianship petition now. These arguments rest on conjecture and relate to issues that are not before us. Because grandparents have no legal right to a consensual or nonconsensual guardianship after the family division has terminated the parents' rights and assigned custody to DCF without limitations as to adoption, their guardianship petition was properly dismissed.

¶ 26. Grandparents next argue that, when the petition was transferred back to the probate division, the probate division was required to hold an evidentiary hearing on the merits of their petition. They cite Mathews v. Eldridge, 424 U.S. 319, 333 (1976), in support of their assertion. According to grandparents, when the family division transferred the guardianship petition back to the probate division, DCF "took action contrary to its own policies to ensure that the grandparents were deprived of any hearing on their petition, on account of its own preference to place the child for adoption elsewhere." They contend that as a result, they "were deprived of their vital interest in ensuring the safety and welfare of [S.O.] without due process of law." They also appear to suggest that DCF, as a matter of policy, was required to place S.O. with them, as relatives, rather than with a "new, State selected famil[y]" and that DCF failed (in unspecified ways) to follow Family Services Division Policy 85, which concerns minor guardianships.

¶ 27. We reject these arguments. DCF was plainly entitled to move to dismiss the guardianship petition, and the court did not err in granting the motion to dismiss without holding a hearing.

¶ 28. The facts relevant to the motion to dismiss were undisputed; the only questions for the probate division were questions of law. Grandparents had notice of the motion and an opportunity to respond to it. See Mathews, 424 U.S. at 333 ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." (quotation omitted)). There was no need for an evidentiary hearing on the merits of the petition

13

because, as set forth above, there was no relief that the probate division could grant to grandparents as a matter of law. Grandparents are not entitled to circumvent the requirements of the statute.

¶ 29. Nothing in Mathews, 424 U.S. at 334-35, compels a contrary conclusion. The Mathews Court explained that:

> [T]he specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Id. at 335.

¶ 30. We agree with DCF that, to the extent grandparents have an interest at stake here, it is the opportunity to establish a minor guardianship if they can satisfy the statute's requirements. This interest was protected through the procedures used: grandparents were provided notice and the opportunity to respond to the legal issues that formed the basis of the motion to dismiss. No hearing was required regardless of what level burden it would impose. There was no basis to hold an evidentiary hearing because the relief for which the evidence would be gathered—the establishment of a nonconsensual guardianship—could not be granted as a matter of law. We reject grandparents' suggestion that DCF failed to "follow its own policies in this case[,]" although it is not readily apparent how that argument relates to the factors cited above.[4]

---

[4] We note that, assuming Family Services Division Policy 85 applies here given that parents' rights have already been terminated, that policy specifically recognizes that a CHINS petition, rather than a custodial guardianship, is the recommended approach "[i]f court intervention is needed because the parent or caretaker is unable to safely resume care of the child(ren) within one month[.]" Dep't for Children & Families, Family Services Division Policy 85, at *2 (eff. July 1, 2013), https://dcf.vermont.gov/sites/dcf/files/FSD/Policies/85.pdf [https://perma.cc/HN3Z-GMCZ]. The policy further provides that "[t]he Family Division and the CHINS process are the appropriate response to manage the on-going safety, permanency and well-being issues for children" and "[t]he CHINS process helps hold all parties, including the division, accountable and maintains a focus on permanency for the child." DCF acted consistently with that policy here.

¶ 31. While grandparents disagree with the outcome in this case, the process here unfolded consistently with the statutory scheme devised by the Legislature to promote a child's best interests, and grandparents were afforded the process they were due. Given our conclusions above, we do not reach grandparents' final argument concerning the evidence that they would have presented had there been a merits hearing. No such hearing was required, and the petition was properly dismissed.

Affirmed.

FOR THE COURT:

_____
Associate Justice